J-A17040-14

2014 PA Super 215

HSBC BANK, NA AS TRUSTEE

        Appellee

        v.

AMY C. DONAGHY

        Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2761 EDA 2013

Appeal from the Judgment entered September 6, 2013
In the Court of Common Pleas of Delaware County
Civil Division at No: 12-000866

BEFORE:  GANTMAN, P.J., PANELLA, and STABILE, JJ.

OPINION BY STABILE, J.:        **FILED SEPTEMBER 29, 2014**

Appellant Amy C. Donaghy appeals from the judgment entered September 6, 2013, following the Court of Common Pleas of Delaware County's (trial court) grant of Appellee HSBC Bank, NA as trustee's motion for summary judgment in this *in rem* mortgage foreclosure action.  For the reasons set forth below, we reverse and remand.

On January 31, 2012, Appellee[1] filed a mortgage foreclosure complaint against Appellant in the trial court, requesting judgment against her for

_____

[1] As the trial court noted by way of background:

    Appellant executed a mortgage and promissory note in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Shelter Mtg. Co., LLC, d/b/a Guaranty Northeast Mtg. on March 29, 2007, in the amount of $568,000 with regard to real property located at 3 East Spring Oak Circle, Media, Delaware County, Pennsylvania.  The mortgage was assigned to [Appellee], HSBC Bank USA, National Association as Trustee for

*(Footnote Continued Next Page)*

"$609,367.58, with interest thereon at the daily per diem amount of $95.25 plus additional late charges, and costs (including escrow advances), additional attorneys' fees and costs." Complaint, 1/31/12, at ¶ 3. In the complaint, Appellee specifically alleged that Appellant failed to make the scheduled payments on the mortgage since August 2011 and consequently, under the terms of the mortgage agreement, the entire loan balance became due and payable. *Id.* at ¶ 7. Moreover, Appellee alleged that it was not required to provide Appellant a written notice of foreclosure under Act 6 (41 P.S. § 403), because "the original principal balance of the [] [m]ortgage [was] more than the original principal balance threshold of the Act."[2] *Id.* at ¶ 9.

On March 19, 2012, upon Appellee's petition, the trial court entered default judgment against Appellant, because she had failed to answer the complaint. On August 2, 2012, Appellant petitioned the trial court to vacate the default judgment against her, alleging, *inter alia*, Appellee failed to provide her with notices required under Sections 20 and 22 of the mortgage agreement. Appellee did not answer Appellant's petition to vacate, and on

---

*(Footnote Continued)*

Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-7 [] on August 17, 2011.

Trial Court Opinion, 12/3/13, at 1.

[2] The threshold or principal base rate amount is $217,873 or less for residential mortgages, as adjusted annually for inflation. *See* 41 P.S. § 101.

October 24, 2012, the trial court issued an order granting the petition and opening the judgment.

On November 13, 2012, Appellant filed an answer to the complaint, generally denying Appellee's allegations and raising new matter, in which she averred, *inter alia*, that Appellee failed to provide her notices required under Sections 20 and 22 of the mortgage agreement. Appellee's Answer, 11/13/12, at ¶¶ 14-15. On November 29, 2012, Appellee replied to the new matter, specifically denying Appellant's averments.

On February 1, 2013, Appellee moved for summary judgment against Appellant on the basis that Appellant "has failed to raise a genuine issue of material fact in her [a]nswer and [n]ew [m]atter and has effectively admitted all material allegations against her by virtue of her general denials." Motion for Summary Judgment, 2/1/13, at ¶ 16. Additionally, addressing Appellant's averment that Appellee failed to comply with the notice provisions of the mortgage agreement, Appellee asserted it indeed provided to Appellant a notice of intent to foreclose.[3] *Id.* at ¶ 13.

Objecting to Appellee's motion for summary judgment, Appellant reiterated her argument that Appellee had failed to comply with the notice

_____

[3] Appellee attached to its motion for summary judgment a sworn affidavit of Tammy Q. Flim Lockhart, Vice President Loan Documentation, who declared that "[Appellant] has failed to cure the default" and that "[Appellee] provided [Appellant] with a [n]otice of [i]ntention to [f]oreclose [m]ortgage, but [Appellant] did not take the necessary affirmative steps to avoid foreclosure." Motion for Summary Judgment, 2/1/13, Exhibit D, at ¶¶ 7-8.

provisions (Sections 20 and 22) of the mortgage agreement. Moreover, Appellant, for the first time, asserted that Appellee violated federal law, because it had failed to comply with HAMP.[4] Specifically, Appellant claimed that Appellee failed to complete her eligibility evaluation for HAMP. *See* Appellant's Response to Summary Judgment, 3/4/13, at ¶ 1. Also, relying upon the Making Home Affordable (MHA) handbook,[5] Appellant claimed that Appellee could not foreclose on her home prior to evaluating her for HAMP. *Id.* On May 8, 2013, the trial court granted the parties 60 days to conduct additional discovery and to supplement the record. The parties, however, did not file any additional documents.

On September 6, 2013, the trial court granted Appellee's motion for summary judgment and entered an *in rem* judgment in its favor and against

_____

[4] "HAMP" is an acronym for the Home Affordable Modification Program, which is a program of the United States Departments of the Treasury & Housing and Urban Development. *See* http://www.makinghomeaffordable.gov/programs/lower-payments/Pages/hamp.aspx. HAMP was created pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5201, for the purpose of assisting homeowners who defaulted on their mortgages, or are in imminent risk of default, by reducing their monthly payments to sustainable levels. *See Kendzior v. Pennsylvania Hous. Fin. Agency*, 2782 C.D. 2010, 2011 WL 10893902, *1 n2 (Pa. Cmwlth. July 20, 2011) (unreported opinion) (citing *Williams v. Geithner*, Civil No. 09–1959 ADM/JJG, 2009 WL 3757380 (D. Minn. 2009) (memorandum opinion)).

[5] *Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages* (MHA Handbook), Version 4.1, 86-88 (Dec. 13, 2012), *available at* https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_41.pdf. The handbook contains directives and guidelines pertaining to HAMP. The HAMP program is not codified as a public law and therefore, it is neither a federal statute nor regulation.

Appellant.  Appellant appealed to this Court.  Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, in which she raised a plethora of issues, the trial court issued a Pa.R.A.P. 1925(a) opinion.  In its 1925(a) opinion, the trial court addressed, among other things, Appellant's contention that Appellee failed to comply with the notice provisions of the mortgage agreement and HAMP.  With respect to the issue of notice, the trial court concluded:

> A review of the pleadings reveals that the notices to which reference is apparently made were not required or were in fact made.  Moreover, and in spite of being afforded the opportunity to conduct discovery under this [c]ourt's [o]rder of May 8, 2013, [Appellant] produced no evidence to dispute [Appellee's] averments as to notice requirements.

Trial Court Opinion, 12/3/13, at 6-7.  Addressing Appellant's HAMP argument, the trial court simply concluded that "[Appellant] offers no legal support for the conclusion that possible loan modification is a bar to foreclosure."  *Id.* at 6.  On appeal,[6]  Appellant essentially raises a single

---

[6] It is well-settled that

> [o]ur scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

> Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party.  Only when the facts are so clear that reasonable minds

*(Footnote Continued Next Page)*

issue for our review.[7]   She argues that the trial court erred in granting

Appellee's motion for summary judgment because Appellee failed to

establish the absence of genuine issues of material fact.   Particularly,

_____

*(Footnote Continued)* _____

> could not differ can a trial court properly enter summary
> judgment.

***Hovis v. Sunoco, Inc.***, 64 A.3d 1078, 1081 (Pa. Super. 2013) (quoting
***Cassel-Hess v. Hoffer***, 44 A.3d 80, 84-85 (Pa. Super. 2012)).

[7] To the extent Appellant argues that Appellee's failure to answer her petition to vacate judgment rendered admitted or deemed admitted averments contained therein, we must reject such argument as waived. Appellant failed to raise this argument in her 1925(b) statement. ***See Majorsky v. Douglas***, 58 A.3d 1250, 1259 (Pa. Super. 2012) (failure to raise an issue in a Rule 1925(b) statement shall result in waiver of that issue), ***appeal denied***, 70 A.3d 811 (Pa. 2013); ***see also Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (concluding "[a]ny issues not raised in a 1925(b) statement will be deemed waived."). Nevertheless, assuming, *arguendo*, this argument was not waived, we would observe that under Pa.R.C.P. No. 206.7(a), "[i]f an answer is not filed, all averments of fact in the petition may be deemed admitted for *the purposes of [the petition]* and the court shall enter an appropriate order." Pa.R.C.P. No. 206.7(a) (emphasis added). Moreover, the comment to Rule 206.7(a) provides that "[i]n the case of the failure to file . . . an answer, an appropriate order may not necessarily be one which is adverse to the defaulting party." Pa.R.C.P. No. 206.7(a) cmt.

Appellant also challenges the affidavit accompanying Appellee's summary judgment motion. Specifically, Appellant argues, among other things, that "[t]he affidavit does not include a statement that the affiant is authorized to make the affidavit in support of this summary judgment motion, nor does the affiant provide a foundation to support her personal knowledge." Appellant's Brief at 17. We, however, must reject this argument as waived. Appellant failed to not only raise the argument in her 1925(b) statement, ***see Majorsky***, ***supra***, but also failed to include it in the statement of questions section of her brief. ***See Southcentral Emp't Corp. v. Birmingham Fire Ins. Co. of Pennsylvania***, 926 A.2d 977, 983 n.5 (Pa. Super. 2007) (holding that issue not explicitly raised in appellant's statement of the questions involved is waived); Pa.R.A.P. 2116(a).

Appellant argues there was factual dispute whether Appellee complied with the notice provisions of the mortgage agreement prior to filing the foreclosure action. In addition, Appellant argues that there was a genuine issue of material fact concerning Appellee's compliance with HAMP.[8]

We first address Appellant's argument that the trial court erred in granting Appellee's summary judgment motion, because Appellee failed to establish the absence of a genuine issue of material fact as to whether it had provided to Appellant notices required under Sections 20 and 22 of the mortgage agreement. Differently put, Appellant contends that Appellee violated the mortgage agreement, which required Appellee to provide Appellant with a notice of default and an opportunity to cure (any violations arising under the mortgage agreement) prior to instituting judicial proceedings.

> Section 20 of the mortgage agreement provides in relevant part:
>
> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

_____

[8] Appellee does not address in its brief Appellant's arguments concerning notices under the mortgage agreement and HAMP, arguing that such arguments are waived because Appellant did not raise them below. Based on our review of the record, and as discussed **supra**, we disagree.

compliance with the requirements of Section 15[9]) of such alleged breach and *afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. . . . The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 [(relating to transfer of property)] shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.*

Mortgage Agreement, 3/29/07, at 13 (emphasis added). Section 22 of the mortgage agreement provides:

Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify the Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of the all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

*Id.* at 14.

Here, based on our review of the entire record, we must agree with Appellant that there is a factual dispute as to whether Appellee complied with the foregoing notice provisions of the mortgage agreement prior to

---

[9] Section 15 of the agreement provides in part that "[a]ll notices given by Borrower or Lender in connection with [the mortgage agreement] must be in writing." Mortgage Agreement, 3/29/07, at 11.

initiating this foreclosure action against Appellant. Specifically, with respect to Section 22 of the agreement, it is unclear from the record whether Appellee, *inter alia*, provided Appellant with a notice of default, an explanation of the action required to cure the default, and a reasonable timeframe by which to cure the default prior to accelerating the mortgage. Regardless, as noted earlier, Appellee in its answer to Appellant's new matter denied having failed to comply with the required notices under the agreement.[10] Such denial was sufficient to create a factual dispute that would bar the entry of summary judgment.

_____

[10] To buttress its position that it provided Appellant with the required notices under the agreement, Appellee attached to its summary judgment motion an affidavit of Ms. Lockhart. As referenced above, the affidavit did not specifically refer to notices sent to Appellant pursuant to the mortgage agreement, but merely stated that "[Appellee] provided [Appellant] with a [n]otice of [i]ntention to [f]oreclose [m]ortgage. Motion for Summary Judgment, 2/1/13, Exhibit D, at ¶ 8. Nonetheless, it is settled that under ***Nanty-Glo v. American Surety Co.***, 163 A. 523 (Pa. 1932), the party moving for summary judgment must present more than its own testimonial affidavits or depositions to establish the absence of a genuine issue of material fact, because such items necessitate credibility determinations by the trier of facts. ***See Krentz v. CONRAIL***, 910 A.2d 20, 36-37 (Pa. 2006); ***but see InfoSAGE, Inc. v. Mellon Ventures, L.P.***, 896 A.2d 616, 631 (Pa. Super. 2006) ("Where, however, the moving party supports its motion for summary judgment by using *the admissions of the opposing party or the opposing party's own witnesses*, entry of summary judgment may be based on oral testimony alone."). Also, the record does not contain a copy of any notices sent to Appellant under the agreement.

We next address Appellant's second argument that Appellee failed to establish an absence of a genuine issue of material fact as to whether it fully complied with HAMP.[11]

To begin, we observe:

Congress enacted the Emergency Economic Stabilization Act in the midst of the financial crisis of 2008. The centerpiece of the statute, the Troubled Asset Relief Program (TARP), delegated to the Secretary of the Treasury broad powers to mitigate the impact of the foreclosure crisis and preserve homeownership. One component of TARP requires the Secretary to implement a plan that seeks to maximize assistance for homeowners and encourage the servicers of the underlying mortgages to take advantage of available programs to minimize foreclosures. Congress also granted authority to use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures.

Acting under this authority, the Secretary introduced the Making Home Affordable Program in February 2009. Within this initiative is HAMP, which is administered by Fannie Mae. HAMP aims to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels. Under HAMP, loan servicers receive incentive payments for each permanent loan modification completed. HAMP modifications derive from a uniform process designed to identify eligible borrowers and render their debt obligations more affordable and sustainable.

Mortgage lenders approved by Fannie Mae must participate in HAMP. This obligation stems from the Mortgage Selling and Servicing Contract (MSSC), a *form contract entered into by Fannie Mae and approved lenders* that establishes the parties' basic legal relationship. *The contract* incorporates by reference Fannie Mae's Selling and Servicing Guides. The latter guide requires servicers of mortgage notes owned by Fannie Mae to participate in HAMP and to abide by HAMP directives and guidelines. Lenders servicing mortgages not owned or guaranteed by Fannie Mae or Freddie Mac may elect to participate in HAMP by executing a Servicer Participation

_____

[11] Neither Appellant nor Appellee explain to this Court what HAMP is, or whether HAMP carries any force of law. Nonetheless, as noted earlier, HAMP is not a codified public law. Rather, it merely is a contract between the federal government and lenders, as explained **infra**.

Agreement [(SPA)] with Fannie Mae in its capacity as financial agent for the United States.

The Department of the Treasury and Fannie Mae have issued a series of directives that provide guidance to mortgage servicers implementing HAMP. Under the guidelines, servicers may identify and solicit borrowers who are in default on their mortgage payments, or soon will be, and evaluate their eligibility to participate in HAMP. A borrower may be eligible for a HAMP modification if, among other things, her mortgage loan originated before January 1, 2009; the mortgage is secured by her primary residence; the mortgage loan has not previously been modified under HAMP; and the mortgage payments amount to more than 31% of the borrower's gross monthly income. To participate in HAMP, borrowers must open an escrow account and submit, among other documents, an affidavit attesting to financial hardship. The servicer conducts a Net Present Value test, which assesses whether the expected cash flow from a modified loan would exceed the cash flow from the unmodified loan.

If the homeowner qualifies under these eligibility criteria, the guidelines direct the servicer to offer that individual a Trial Period Plan (TPP). Under the TPP, the homeowner undertakes to pay modified mortgage payments, calculated based on financial documentation submitted during the eligibility phase, for a three-month trial period. The standard-form TPP represents to borrowers that they will obtain a permanent modification at the end of the trial period if they comply with the terms of the agreement.

*A servicer participating in HAMP may not proceed with a foreclosure sale on a property in default until the borrower has been evaluated for HAMP eligibility*. The guidelines require servicers to use reasonable efforts to contact borrowers facing foreclosure to determine their eligibility.

***Markle v. HSBC Mortgage Corp. (USA)***, 844 F. Supp. 2d 172, 176-77 (D. Mass. 2011) (emphasis added) (internal citation, footnotes, and quotation marks omitted); ***see also Wigod v. Wells Fargo Bank, N.A.***, 673 F.3d 547, 556 (7th Cir. 2012) (noting that the Treasury Department negotiated a SPA "with dozens of home loan services, including Wells Fargo").

In support of her argument, Appellant points out that, under Section 3 of the MHA handbook, relating to protections against unnecessary

foreclosure, Appellee was required to halt foreclosure proceedings until Appellant's eligibility for HAMP was determined. Section 3.1.1. of the handbook provides, *inter alia*, that "[a] servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure sale unless and until . . . [t]he borrower is evaluated for HAMP and is determined to be ineligible for the program." MHA Handbook, at 86. In addition, Section 3.2 of the handbook provides in pertinent part:

> With respect to a borrower who submits a request for HAMP consideration *after* a loan has been referred to foreclosure, the servicer must, immediately upon the borrower's acceptance of a TPP based on verified income, and for the duration of the trial period, take those actions within its authority that are necessary to halt further activity and events in the foreclosure process, whether judicial or non-judicial, including but not limited to refraining from scheduling a sale or causing a judgment to be entered.

*Id.* (emphasis added). Instantly, we glean from the record that Appellant requested to be evaluated by Appellee for HAMP and that, in response, Appellee sought certain documents from Appellant for that purpose. ***See*** Letter from Wells Fargo, 3/8/12; Letter from Wells Fargo Home Mortgage, 3/8/12; Making Home Affordable Program Request for Mortgage Assistance (RMA), 7/13/2012; Letter from Wells Fargo Home Mortgage, 4/20/12; Letter from Wells Fargo Home Mortgage, 4/12/12; Letter from Wells Fargo Home Mortgage, 7/6/12; Letter from Wells Fargo, 7/19/2012. The record, however, is not clear as to the result of that evaluation—*i.e.*, whether Appellant was deemed eligible for HAMP. In fact, it is not even clear whether Appellee at all conducted an evaluation of Appellant's eligibility for

HAMP. Also, it is unclear from the record whether Appellant requested to be evaluated for HAMP prior or subsequent to Appellee's filing of the underlying foreclosure action.

Regardless, it is well-settled that borrowers do not have a private federal right of action under HAMP, a federal program created pursuant to the Emergency Economic Stabilization Act. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 776 n.4 (4th Cir. 2013); *Sinclair v. Citi Mortg., Inc.*, 519 F. App'x. 737, 739 (3d Cir. 2013), *cert. denied*, 134 S.Ct. 245 (2013). The primary reason upon which courts have relied to deny borrowers a right of action is that borrowers are not intended third party beneficiaries of HAMP contracts between the federal government and lenders. *See Wigod*, 673 F.3d at 559 n.4.

Instantly, as stated above, Appellant cites to HAMP only as a defense to Appellee's summary judgment motion, alleging that a factual dispute exists over Appellee's compliance with HAMP, *i.e.*, Section 3 of MHA handbook.[12] We, however, reject Appellant's effort to raise the existence of a factual dispute by asserting HAMP as a defense. Our review of the law indicates that, even if Appellee failed to comply with Section 3 of MHA

_____

[12] Appellant alleged in her response to Appellee's motion for summary judgment that Appellee was subject to HAMP. *See* Memorandum of law in support of Appellant's response to Appellee's summary judgment motion, 3/4/13, at 10. It is, however, unclear from the record whether Appellee was bound to HAMP because it is unclear whether the mortgage was owned or guaranteed by Freddie or Fannie, or because Appellee executed a SPA.

handbook prior to proceeding with its foreclosure action against Appellant, Appellant *does not have a right* to bring an action against Appellee for such noncompliance. It, therefore, logically follows that Appellant's raising of Appellee's noncompliance with HAMP is futile when Appellant has no right to enforce compliance.

Accordingly, viewing the record in the light most favorable to the non-moving party and resolving all doubts as the existence of a genuine issue of material fact against the moving party, we conclude that the trial court erred in granting Appellee's motion for summary judgment on its foreclosure complaint. There is a factual dispute as to whether Appellee complied with Sections 20 and 22 of the mortgage agreement.

Judgment reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2014