NANOVIC, P.J.,
Plaintiff seeks summary judgment in this suit to foreclose on a residential mortgage executed by defendant. For the reasons which follow, plaintiff’s motion will be granted.
FACTUAL AND PROCEDURAL BACKGROUND
On March 24, 2008, defendant, Jacqueline Miceli, borrowed $232,000.00 from Wachovia Mortgage, FSB (“Wachovia”), mortgaging her home at 255 Brittany Drive, Penn Forest Township, Carbon County, Pennsylvania, as security. This loan was evidenced by a fixed rate mortgage note (“note”) and first lien mortgage (“mortgage”) of the same date, both of which named Wachovia as the lender. Under the note, defendant was obligated to make specified *206 monthly payments on or before the first day of each calendar month, with the first payment due on May 1, 2008. Plaintiff, Wells Fargo Bank, N.A. (“Wells Fargo”), is the successor by merger to Wachovia.
On October 8, 2013, plaintiff filed a complaint in mortgage foreclosure against defendant alleging, inter alia, that the mortgage was in default for failing to pay all monthly mortgage payments beginning with the payment due January 1, 2013, and seeking an in rem judgment against the mortgaged premises. Defendant filed preliminary objections on October 29, 2013. On November 15, 2013, plaintiff filed an amended complaint asserting substantially the same claims as in the original complaint. Defendant filed her answer and new matter on December 19, 2013, to which plaintiff filed a reply on January 7,2014.
On March 14, 2014, plaintiff filed a verified motion for summary judgment (“motion”), alleging that there are no genuine issues of material fact as defendant’s general and/or ineffective denials are deemed to be admissions under the Pennsylvania Rules of Civil Procedure. The motion was supported by plaintiff’s vice president of loan documentation’s affidavit attesting that defendant owes $283,284.88 on the mortgage, plus per diem interest in the amount of $55.21 accruing from February 14, 2014, forward. Attached to the motion and incorporated by reference were copies of various documents marked as supporting exhibits.
Defendant filed an unverified response in opposition to the motion on April 17,2014, wherein defendant disputed (1) that there are no genuine issues of material fact; (2) that plaintiff is the current holder of the note and entitled *207 to enforce the mortgage;[1] (3) that plaintiff complied with the notice requirements of Act 6, 41 P.S. § 403(a), and Act 91, 35 P.S. §1680.401c, before commencing its suit; and (4) that plaintiff has complied with the guidelines of the federal Home Affordable Modification Program (“HAMP”).
In response to defendant’s fourth claim, plaintiff argued it had complied with the HAMP guidelines but that defendant failed to make application for a mortgage modification under HAMP. Additionally, on June 20, 2014, plaintiff filed a second affidavit attaching copies of two HAMP solicitation letters it sent to defendant on February 26, 2013, and April 30, 2013, respectively, and asserting that because defendant failed to formally apply for assistance, there was no active review for HAMP and no HAMP denial letter. The parties presented oral argument before this court on June 13, 2014.
DISCUSSION
Before analyzing each of the parties’ contentions, we note the standard for summary judgment. When deciding a motion for summary judgment, we “examine the record, which consists of all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and [the court] resolves all doubts as to the existence of a genuine issue of material fact against the moving party.” LJL Transp., Inc. v. Pilot Air *208 Freight Corp., 962 A.2d 639, 647 (Pa. 2009); Pa.R.C.P. 1035.1. We are to enter summary judgment under two circumstances. First, “whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense.” Pa.R.C.P. 1035.2(1). Second, “if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense.” Pa.R.C.P. 1035.2(2). “Thus, a record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense.” Petrina v. Allied Glove Corp., 46 A.3d 795, 798 (Pa. Super. 2012) (quoting Chenot v. A.P. Green Servs., 895 A.2d 55, 61 (Pa. Super. 2006)). Amotion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. See Fine v. Checcio, 870 A.2d 850 (Pa. 2005); Pa. R.C.P. 1035.2.
The burden of proving that there exists no genuine issue of material fact is upon the moving party. Kafando v. Erie Ceramic Arts Co., 764 A.2d 59, 61 (Pa. Super. 2000). Furthermore, the court may not consider any assertion of fact made by a party that is not supported by the record. Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 606 (Pa. Super. 1997) (citing Erie Idem. Co. v. Coal Operators Case Co., 272 A.2d 465, 466-67 (Pa. 1971)). “Bold unsupported assertions of conclusory accusations cannot create genuine issues of material fact.” Botkin v. Metro. Life Ins. Co., 907 A.2d 641, 647 (Pa. Super. 2006) (internal citation omitted).
In ruling on a motion for summary judgment, the court must restrict its review to material filed in support *209 of and in opposition to the motion, and to uncontroverted allegations in the pleadings. Overly v. Kass, 554 A.2d 970, 972 (Pa. Super. 1989); Washington Federal Savings & Loan Association v. Stein, 515 A.2d 980, 981 (Pa. Super. 1986). In opposing a motion for summary judgment on the basis of disputed issues of material fact, the non-moving party may not rely solely upon the averments contained in its pleadings, but must point to evidence in the record controverting the evidence cited in support of the motion, or challenge the credibility of witnesses testifying in support of the motion. Phaff v. Gerner, 303 A.2d 826, 829 (Pa.1973); Adamski v. Allstate Ins. Co., 738 A.2d 1033, 1035 (Pa. Super. 1999); Pa.R.C.P. 1035.3.
To be deemed a material fact, the fact must be both material in the sense of bearing on an essential element of the plaintiff’s claim and genuine in the sense that a reasonable jury could find in favor of the non-moving party. U.S. ex rel. Cantekin v. University of Pittsburgh, 192 F.3d 402, 408 (3d. Cir. 1999) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-251. (1986)). A fact is material if it directly affects the disposition of the case. See Zuppo v. Com., Dep’t of Transp., 739 A.2d 1148, 1156 (Pa. Cmwlth. 1999).
In evaluating the facts of the case, the trial court must view the facts “in the light most favorable to the party opposing the motion and resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.” Drellis v. Mfrs. Life Ins. Co., 881 A.2d 822, 830 (Pa. Super. 2005) (internal citation omitted). All reasonable inferences must be drawn in favor of the party opposing the motion for summary judgment. See Rosenberry v. Evans, 48 A.3d 1255, 1261 (Pa. Super. 2012).
*210 In its consideration of whether there exists a genuine issue of material fact, “the court does not weigh the evidence, but determines whether a reasonable jury, faced with the evidence presented, could return a verdict for a non-moving party.” 401 Fourth Street, Inc. v. Investors Ins. Group, 879 A.2d 166, 175 n. 4 (Pa. 2005). Conversely, summary judgment may be granted when the facts are so clear that reasonable minds could not differ on a factual question. Kvaerner Medals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006). Nevertheless, only when “the right to such judgment is clear and free from doubt” may the court grant summary judgment. 401 Fourth Street, Inc., 879 A.2d at 175 n. 4.
A. Genuine Issues of Material Fact
Plaintiff contends there are no genuine issues of material fact, in part because the defendant made several general denials in her answer which should be viewed as admissions. Defendant contends her denial that the mortgage payments are in default and denial of the amount due present genuine issues of material fact that preclude the entry of summary judgment.[2]
We address first defendant’s contention that the mortgage is not in default. Paragraph 7 of the amended complaint avers that defendant is in default under the terms of the mortgage for, inter alia, failing to make the monthly payment of principal and interest due January 1, 2013. In his affidavit in support of the motion, Michael *211 Reynosa, vice president of loan documentation at Wells Fargo, deposes and states that defendant’s mortgage payments due January 1, 2013, and each month thereafter are due and unpaid. (Plaintiff’s motion for summary judgment, ¶ 9; Exhibit B (Affidavit, ¶ 5)). This statement is supported by defendant’s payment history also attached to the motion. (Plaintiff’s motion for summary judgment, ¶ 10; Exhibit Bl).
Defendant responded to paragraph 7 of the amended complaint as follows:
7. Denied. Calls for a conclusion of law to which no response is necessary. To the extent a response is deemed necessary, Defendant has requested a modification of the mortgage and plaintiff has failed to address defendant’s requests. A modification of the mortgage would cure any default, which defendant specifically denies.
Plaintiff argues this response is a general denial, which should be treated as an admission. On this point, Pa.R.C.P. 1029 provides:
(a) A responsive pleading shall admit or deny each averment of fact in the preceding pleading or any part thereof to which it is responsive. A party denying only a part of an averment shall specify so much of it as is admitted and shall deny the remainder. Admissions and denials in a responsive pleading shall refer specifically to the paragraph in which the averment admitted or denied is set forth.
(b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by *212 subdivision (c) and (e) of this rule, shall have the effect of an admission.
(c) A statement by a party that after reasonable investigation the party is without knowledge or information sufficient to form a belief as to the truth of an averment shall have the effect of a denial.
Although defendant’s response to paragraph 7 of the amended complaint uses the phrase “specifically denies,” she does not specifically deny the averment that she failed to pay the monthly installment due on January 1, 2013. Nor does she aver that the payment was made. At a minimum, defendant should know what payments were made on the mortgage and when the last payment was made. Her averment that she has requested a modification and plaintiff failed to respond to that request is irrelevant. Cf. U.S. Bank v. Cox, 11 Pa.D.&C.5th 179, 189 (2010) (holding a bank has no obligation to modify a borrower’s mortgage). Paragraph 7 of defendant’s answer is therefore a general denial which has the effect of admitting that the January 1, 2013, monthly installment was not paid. Pursuant to the mortgage this is a default rendering the entire debt collectible immediately.
In conjunction with defendant’s denial of a default, we also consider defendant’s response to plaintiff’s motion wherein defendant states that if there was a default, it was cured by a modification of the mortgage. Defendant avers that the parties, after negotiations and payments by the defendant, agreed to a modification of the mortgage which constituted a novation and cured any alleged default. (Defendant’s response in opposition to plaintiff’s motion for summary judgment, ¶¶ 3,9,19). Defendant also alleges that the loan history that plaintiff has attached to its motion is inaccurate because she made payments pursuant to the *213 alleged modification agreement. Id. at ¶ 10.
The party opposing summary judgment:
may not rest upon the mere allegations or denials of the pleadings but must file a response . . . identifying one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion.
Pa.R.C.P. 1035.3(a); see also Banks v. Trustees of Univ. of Pennsylvania, 666 A.2d 329, 331 (Pa. Super. 1995). Defendant has identified nothing in the record that controverts plaintiff’s averments that the mortgage has been in default since January 1,2013.
As the party opposing the motion, defendant is allowed to supplement the record with evidence to justify her opposition or set forth the reasons why she is unable to do so. See Pa.R.C.P. 1035.3(b). Defendant has not submitted any depositions, affidavits, documents, or other evidence to support her averments that the mortgage was modified or that the default was cured, nor has she given any reason why this evidence cannot be presented. Viewing the evidence in the light most favorable to defendant as the party opposing the motion, there are no genuine issues of material fact that defendant has failed to make the monthly payments secured by the mortgage, starting with the payment due on January 1,2013, or that the mortgage has not been modified.
Next, we address defendant’s contention that her denial of the amount alleged by plaintiff to be due on the mortgage is a genuine issue of material fact. In paragraph 8 of the amended complaint, plaintiff avers the unpaid principal balance due as of November 12, 2013 was $256,715.55 and that the total amount then due and owing — consisting *214 of the unpaid principal balance, accumulated interest, late charges and other fees — is $278,191.62. In her answer to this averment, defendant states:
8. Denied. After reasonable investigation, defendant is without sufficient information to admit or deny this averment, as plaintiff has not provided proof of alleged expenditures. Strict proof is demanded at time of trial.
Defendant does not aver what she believes to be the correct amount or any reason to believe that the amounts averred by plaintiff are incorrect.
Pursuant to the affidavit of Michael Reynosa attached to the motion, the total amount due and owing as of February 13, 2014 was $283, 284.88, plus per diem interest in the amount of $55.21 accruing from February 14, 2014. (Plaintiff’s motion for summary judgment, ¶¶ 9, 11; Exhibit B (Affidavit, ¶ 6)). These statements contained in Mr. Reynosa’s affidavit are also corroborated by defendant’s payment history. (Plaintiff’s motion for summary judgment, ¶ 10; Exhibit Bl).
As discussed supra, Pa.R.C.P. 1029(c) permits a party to deny an averment by stating that after reasonable investigation, it is without knowledge or information sufficient to form a belief as to the truth of the averment. Nevertheless, a party cannot deny under Rule 1029(c) allegations whose truth or falsity it must know. Cercone v. Cercone, 386 A.2d 1, 4 (Pa.Super 1978). In mortgage foreclosure actions, “general denials by mortgagors that they are without information sufficient to form a belief as to the truth of the averments as to principal and interest ow[ed] must be considered an admission of those facts.” First Wisconsin Trust Co. v. Strausser, 653 A.2d 688, 692 (Pa. Super. 1995) (citing New York Guardian Mortgage Corp. v. Dietzel, 524 A.2d 951, 952 (Pa. Super. 1987)). *215 See also In re Carmichael, 443 B.R. 698, 702 (Bankr.E.D. Pa. 2011) (“[I]n a mortgage foreclosure action, the mortgagors, aside from the mortgagee or assignee, are the only parties with sufficient knowledge to base a specific denial.”). Under our case law, paragraph 8 of defendant’s answer admits the amount claimed to be due by plaintiff.
B. Notice of Intent to Foreclosure
Defendant avers in her answer to the amended complaint that she does not recall receiving notice of plaintiff’s intent to foreclosure and alleges that plaintiff has not provided proof that such notice was mailed. (Answer, ¶ 9). On this issue, defendant challenges at most plaintiff’s compliance with the service requirements of Act 6 and Act 91, not its compliance with the substantive requirements of either statute.
Act 6 provides that before a mortgagee commences a legal action against the grantor of a residential mortgage, it must first send written notice, by registered or certified mail, to the mortgagor at her last known address and, if different, at the residence which is the subject of the residential mortgage. 41 P.S. § 403(b). This written notice must be sent to the mortgage debtor by registered or certified mail at least thirty days in advance of commencing an action in mortgage foreclosure, and the debtor must be allowed to cure the default and thus avoid foreclosure proceedings within this prescribed time frame. 41 P.S. §§ 403(a) and 404(c). The Section 403 notice is mandatory. See General Electric Credit Corp. v. Slawek, 409 A.2d 420, 422 (Pa. Super. 1979); see also Potter Title & Trust Co. v. Berkshire Life Ins. Co., 39 A.2d268, 270 (Pa. Super. 1944) (“Where notice in a specific manner is prescribed by statute, that method is exclusive.”); and Ertel v. Seitzer, 31 Pa.D.&C.3d 332, 333 (1982) (“The service requirements *216 of Act 6 must be strictly construed.”).
Similarly, Act 91 requires a mortgagee who intends to foreclose to send written notice to the mortgagor at her last known address before beginning a foreclosure action. 35 P.S. § 1680.403c(a). The Act 91 notice is to be sent by regular mail, and if the mailing is documented by a certificate of mailing obtained from the United State Postal Service, the notice is deemed to have been received on the third business day following the date of mailing. 35 P.S. § 1680.403c(e); cf. Donegal Mutual Insurance Company v. Insurance Department, 719 A.2d 825 (Pa. Cmwlth. 1998) (discussing the “mailbox rule”). The written notice under the combined Act 6/91 provisions of Act 160 of 1998 must be sent to the homeowner’s last known residence by regular and either registered or certified mail, and to the mortgaged premises, if different. 12 Pa.Code § 31.203(a) (1).
Defendant’s purported failure to receive notice is not grounds for denying summary judgment in favor of the plaintiff. A copy of the notice and proof of mailing was attached to plaintiff’s motion. (Plaintiff’s motion for summary judgment, Exhibit F). This exhibit evidences that the combined Act 6/91 notice of intention to foreclose was sent to defendant at 255 Brittany Drive, Penn Forest Township, PA 18219 on July 15, 2013 via certified mail, which address is the same as that given for the property encumbered by the mortgage and which was identified as defendant’s residence in the original complaint, at which location service of the complaint was made on defendant by the Carbon County Sheriff’s Office. Since defendant’s last known address was the same as that for the mortgaged premises, the combined notice required by Acts 6 and 91 was required to be sent to this address alone. Plaintiff also submitted a certificate of mailing, thereby entitling *217 plaintiff to the statutory inference that the notice was deemed to have been received by defendant as of July 18, 2013, three business days after the date of mailing. See 35 P.S. § 1680.403c(e).
The complaint was filed on October 8,2013, more than thirty days after the notice of foreclosure was deemed to have been received. Defendant has not alleged that the address on the notice was incorrect, nor has she submitted any evidence to support her averment that service was defective. See Pa.R.C.P. 1035.3(b). Absent a fatal defect in service appearing on the face of the record, defendant’s averments that she did not receive notice are insufficient to establish that the notice sent was defective. See Peoples Bank v. Dorsey, 683 A.2d 291, 296 (Pa. Super. 1996) appeal denied, 693 A.2d 967 (Pa. 1997); see also First Federal Sav. & Loan Ass ’n of Wilkes-Barre v. Van Why, 29 Pa.D.&C.3d 675, 682 (1983) (holding that when a plaintiff has strictly complied with the service requirements of Act 6, service is valid unless defendant alleges that the address on the notice was incorrect). Having found that plaintiff strictly complied with the service requirements of Act 6 and Act 91, defendant’s unsupported averments that she does not recall receiving notice are insufficient to deny the grant of summary judgment.
C. Plaintiff’s Compliance With HAMP Guidelines
Defendant avers that plaintiff is a participant in the federal Home Affordable Modification Program (“HAMP”).[3] Defendant further alleges that plaintiff has failed to comply with HAMP guidelines that require a *218 participating lender, upon request of the mortgagor, to evaluate a mortgage in default for modification before bringing a foreclosure action. Defendant argues that she made a request for modification and plaintiff failed to comply with the HAMP guidelines by not issuing a written denial on her request before proceeding with the foreclosure sub judice. This non-compliance, according to defendant, prevents plaintiff from proceeding with the foreclosure.
Before we evaluate the merits of defendant’s claim, a brief review of HAMP is helpful. The United States court of appeals for the first circuit summarized the history of HAMP as follows:
In an effort to mitigate the destabilizing effects of the financial crisis of 2008, Congress enacted the Emergency Economic Stabilization Act of 2008 (“EESA”), [12 U.S.C. § 5201, et seq.,] Pub. L. No. 110-343, 122 Stat. 3765. EESA authorized the Secretary of the Treasury to, inter alia, “implement a plan that seeks to maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages” to minimize foreclosures. To effectuate these goals, the Secretary was given the power to “use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures.” Pursuant to this authority, the Secretary created an array of programs designed to identify likely candidates for loan modifications and encourage lenders to renegotiate their mortgages. HAMP is one of these programs.
HAMP urges banks and loan servicers to offer loan modifications to eligible borrowers with the goal of “reducing [their] mortgage payments to sustainable levels, without discharging any of the underlying *219 debt.” The secretary, through Fannie Mae, entered into agreements with numerous home loan servicers, including Wells Fargo, pursuant to which the servicers “agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program.” The servicers are to conduct an initial evaluation of a particular homeowner’s eligibility for a loan modification using a set of guidelines promulgated by the Treasury Department. If the borrower meets those criteria, “the guidelines direct the servicer to offer that individual a Trial Period Plan (‘TPP’)” as a precursor to obtaining a permanent modification. If the borrower complies with the TPP’s terms, including making required monthly payments, providing the necessary supporting documentation, and maintaining eligibility, the guidelines state that the servicer should offer the borrower a permanent loan modification. Loan servicers receive a $1,000 payment for each permanent modification, in addition to other incentives.
Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228-29 (1st Cir. 2013) (internal citations omitted).
Defendant cites a Servicer Participation Agreement (“SPA”) template, which she avers is the basis for the agreement that plaintiff entered into with Fannie Mae when it chose to participate in HAMP. Although defendant has not submitted a copy of the actual SPA entered between plaintiff and Fannie Mae, this is not fatal to her claim because plaintiff admits that it participates in HAMP insofar that it acknowledges that it sent letters to defendant soliciting her to seek an evaluation of her mortgage for HAMP eligibility. (Affidavit of Jorge *220 Salamanca, ¶ 2, Exhibit A).[4] Additionally plaintiff’s participation in HAMP is a matter of record in numerous published federal cases. See e.g. Young v. Wells Fargo Bank, N.A., supra; Corvello v. Wells Fargo Bank, NA, 728 F.3d 878, 880 (9th Cir. 2013); Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556 (7th Cir. 2012).
The implementation of HAMP has spawned a plethora of litigation in both federal and state courts. Borrowers have brought actions alleging that lenders have violated the HAMP guidelines and requested that the courts order the lenders to comply with the guidelines. See, e.g., Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 775 (4th Cir. 2013); Miller v. Chase Home Finance, LLC, 611 F.3d 1113, 1116 (11th Cir. 2012); Pfeifer v. Countrywide Home Loans, Inc., 150 Cal.Rptr.3d 673 (Cal. App. 2012), review denied, 150 Cal.Rptr.3d 673 (Cal. App. 2013); JP Morgan Chase Bank, Nat. Ass’n v. Ilardo, 940 N.Y.S.2d 829, 36 Misc.3d 359 (N.Y. Sup. 2012). Almost universally state and federal courts have held that a borrower does not have a private cause of action[5] to seek enforcement *221 of the HAMP regulations and guidelines against a lender.[6] See, e.g., Spaulding, 714 F.3d at 776 n. 4; Miller, 677 F.3d at 1116; Sinclair v. Citi Mortg., Inc., 519 F.App’x. 737, 739 (3d Cir. 2013), cert. denied, 134 S.Ct. 245, 187 L.Ed.2d 182 (U.S. 2013), reh’g denied, 134 S.Ct. 1054, 188 L.Ed.2d 140 (U.S. 2014); Pfeifer, 150 Cal.Rptr.3d at 698 n. 17; Ilardo, 940 N.Y.S.2d at 837, 839.
Defendant raises plaintiff’s non-compliance with HAMP guidelines as a defense against the foreclosure, instead of as a cause of action in its own right or as a counterclaim. Defendant argues that the HAMP guidelines prohibit plaintiff from foreclosing on defendant’s home until it has evaluated her mortgage for a modification pursuant to HAMP. Defendant further argues that if defendant was subsequently found to be ineligible for a modification, plaintiff must provide defendant with written notice of this determination before proceeding with its foreclosure action. (Defendant’s brief in opposition to plaintiff’s motion for summary judgment, pp. 2-3 (citing HAMP guidelines, §§ 2.3.2.1, 3.1)).[7]
In contrast to the hundreds of cases filed in state and federal courts asserting a private right of action under HAMP, very few cases involve an assertion of HAMP as a defense to a foreclosure action, as is raised here. *222 Recently, however, the Pennsylvania Superior Court held that a defendant in a foreclosure action may not raise as a defense compliance with HAMP guidelines. HSBC Bank, NA v. Donaghy, 101 A.3d 129, 136-37 (Pa. Super. 2014). In Donaghy, the court concluded that because a borrower has no right to bring a private cause of action against a lender to enforce compliance with the HAMP guidelines, it is equally futile for a borrower to raise noncompliance as a defense. Id. In reaching this conclusion, the court noted that HAMP is not codified as public law and is neither a federal statute nor regulation. Donaghy, 101 A.3d at 131 n. 5. Accord Charter Bank v. Francoeur, 287 P.3d 333 (N.M.Ct.App. 2012), cert. granted, 296 P.3d 491 (N.M. 2012), and cert, quashed, 301 P.3d 859 (N.M. 2013) (holding that because a defendant borrower cannot maintain a cause of action to enforce the lender’s HAMP SPA, the lender’s failure to comply with HAMP requirements does not provide a meritorious defense to foreclosure); see also CitiMortgage, Inc. v. Carpenter, 2012-Ohio-1428, 2012 WL 1079807 (Ohio App. Mar. 30, 2012) (concluding that a borrower may not assert a defense based on non-compliance with the HAMP guidelines because a borrower is not a third-party beneficiary to the lender’s HAMP SPA and the HAMP guidelines do not have the force and effect of law). Pursuant to Donaghy, plaintiff’s alleged noncompliance with HAMP guidelines on the theory that HAMP provides defendant with a private cause of action against plaintiff cannot serve as a basis to preclude the granting of summary judgment. Nor do we believe the result would be different if defendant’s defense were premised upon defendant being a third party beneficiary to plaintiff’s HAMP SPA, which defendant has not argued. See Donaghy, 101 A.3d at 136.
*223 CONCLUSION
On the record before us, the material facts are undisputed that plaintiff is the real party in interest with standing to bring suit for breach of the defendant’s obligations under the mortgage, that defendant has breached the payment terms of the mortgage, and that the amount claimed by plaintiff is the amount defendant owes. Nor does a factual dispute exist that plaintiff has not served notice of its intent to foreclose as required by Act 6 and Act 91. To the extent defendant claims it has requested a mortgage modification and plaintiff has failed to comply with HAMP, not only is this claim unsupported by the record, as a matter of law the claim does not raise a cognizable defense to plaintiff’s action. Based on the foregoing, we conclude, as a matter of law, that Wells Fargo is entitled to summary judgment in its favor.
Civil Law — Real Estate — Mortgage Foreclosure — Residential Mortgage — Act 6 — Act 91 — Home Affordable Modification Program (“HAMP”) — Standard for Granting Summary Judgment — Waiver of Issues (Failure to Brief) — Pa.R.C.P. 1029(c) — Admissions
1. A record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense.
2. In opposing a motion for summary judgment on the basis of disputed issues of material fact, the non-moving party may not rely solely upon the averments contained in its pleadings, but must point to evidence in the record controverting the evidence cited in support of the motion, or challenge the credibility of witnesses testifying in support of the motion.
*224 3. Issues not briefed are waived.
4. A party is not permitted under the guise of Pa.R.C.P. 1029(c) to deny an averment whose truth or falsity it must know. Consequently, general denials by a mortgagor in a mortgage foreclosure action that the mortgagor is without information sufficient to form a belief as to the truth of the averments as to principal and interest owed will be deemed an admission of those facts.
5. Where a mortgagee strictly complies with the service requirements of Act 6 and Act 91, a defendant’s averments that she did not receive notice are insufficient to establish that the notice sent was defective or to deny the grant of summary judgment on this basis.
6. The Home Affordable Modification Program (“HAMP”) is a federally sponsored Fannie Mae program with participating lenders pursuant to which homeowners in default, or likely to be in default, on their mortgage payments are evaluated for a loan modification to reduce their mortgage payments to affordable levels, without discharging any of the underlying debt, with the object of avoiding foreclosure. For those loans which meet the regulations and guidelines of HAMP, upon successful completion of a trial period, the homeowners are offered a pennanent loan modification.
7. A borrower does not have a private cause of action to seek enforcement of the HAMP regulations and guidelines against a lender. Nor may a defendant in a mortgage foreclosure proceeding raise as a defense non-compliance with HAMP regulations or guidelines.

. Defendant subsequently waived this issue at oral argument. Defendant had earlier argued that Wells Fargo was a separate legal entity from Wachovia and, absent an assignment from Wachovia, was not the real party in interest. At argument defendant acknowledged that Wells Fargo was the successor by merger with Wells Fargo Bank Southwest, N. A., formerly known as Wachovia Mortgage, FSB, and that, consequently, Wells Fargo owned the note and was entitled to enforce the mortgage.

. Defendant’s brief in opposition to plaintiff’s motion addresses only one issue: whether its alleged application for modification stays foreclosure, which we discuss below. Because defendant has not briefed the remaining issues raised in her response to plaintiff’s motion, they are waived. Browne v. Commonwealth, 843 A.2d 429, 434-35 (Pa. Cmwlth. 2004). Nevertheless, we review what we perceive to be the most significant of these in the discussion which follows.

. Sometimes referred to as the “Home Affordable Mortgage Program.” See e.g. Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 554 (7th Cir. 2012); Nevada v. Bank of Am. Corp., 672 F.3d 661, 665 (9th Cir. 2012).

. Plaintiff denies that it has not complied with HAMP. To the contrary, through Mr. Salamanca’s affidavit, plaintiff alleges not only that it informed defendant about HAMP, but asked her to contact it to determine if she was eligible for a loan modification. As represented in Mr. Salamanca’s affidavit, because plaintiff did not formally apply for assistance, there was no active review for HAMP and no HAMP denial letter. Again, defendant has presented no evidence to contradict Mr. Salamanca’s representations. Notwithstanding this absence of evidence by defendant, plaintiff argues that even if defendant’s unverified response to plaintiff’s motion created a material issue of fact, as a matter of law, non-compliance with HAMP does not provide a defense to foreclosure.

. The court of appeals in Wigod noted that in cases where borrowers brought HAMP-related claims, they relied on at least one of three different legal theories: (1) a private cause of action under HAMP, (2) a right to enforce the HAMP SPAs as third-party beneficiaries to those agreements, and (3) claims arising out of TPP agreements between the borrower and the lender. 673 F.3d at 559 n. 4. As neither plaintiff nor defendant allege that a TPP agreement was entered between them, this third basis for enforcement of the HAMP guidelines is inapplicable.

. The HAMP guidelines refer to participating mortgage holders as “servicers,” as do several of the published cases examining this issue. However, many of the cases cited herein use the term “lenders” to refer to the participating mortgage holders. We use the term “lender” throughout, except for quotations from those cases that use the term “servicer.”

. We note that the URL for the HAMP guidelines defendant cites in her brief is no longer functioning and appears to refer to an obsolete version of the guidelines (i.e. Version 3.0). The HAMP guidelines in effect at the time this foreclosure action was initiated can be found in the Making Home Affordable Program Handbook for Servicers of Non •— GSE Mortgages (MHA Handbook), Version 4.3, pp. 84-85, 88 (September 16, 2013), available at http://www.hmpadmin.com/portal/ programs/docs/hamp_servicer/mhahandbook_43.pdf.