J-S25018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| U.S. BANK N.A., AS TRUSTEE IN TRUST FOR AND F/B/O THE CERTIFICATE HOLDERS OF MULTI-CLASS MORTGAGE PASS-THROUGH CERTIFICATES CHASEFLEX TRUST, SERIES 2006-2 | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | No. 3552 EDA 2016 |
| | : : : | |
| DURAND O'MEARA A/K/A DURAND J. O'MEARA | : : : | |
| Appellant | : : | |

Appeal from the Judgment Entered October 31, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2013-11842-RC

BEFORE: BENDER, P.J.E., and RANSOM, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY RANSOM, J.:                    **FILED JUNE 13, 2017**

In this mortgage foreclosure action, Appellant Durand O'Meara appeals from the judgment entered October 31, 2016 awarding an *in rem* verdict in the amount $1,600,957.43, plus interest and costs in favor of Appellee U.S. Bank N.A., as trustee in trust for and f/b/o the Certificate Holders of Multi-Class Mortgage Pass-Through Certificates Chaseflex Trust, Series 2006-2, (hereinafter "U.S. Bank"). We affirm.

On May 17, 2006, Appellant executed a thirty-year, interest-first, fixed-rate mortgage ("Mortgage") to secure indebtedness on a loan extended by promissory note ("Note") in the sum of $1,045,000 in favor of the lender, Stonebridge Bank. The Note was signed by Linda Tipton, authorized

assistant secretary of JP Morgan Chase Bank, N.A., and attorney in fact for Stoneridge Bank. *See* Note, 5/17/2006, at 3. The Note directed payment to JP Morgan Chase Bank, N.A. *Id.* On the same date, Stonebridge assigned the Mortgage to JP Morgan Chase Bank, N.A. On July 6, 2006, the assignment of the Mortgage to JP Morgan Chase Bank was recorded.

In June 2010, Appellant defaulted on his payment obligations under the Note. In September 2010, U.S. Bank sent Act 91 notice of default to Appellant. In December 2012, JP Morgan Chase confirmed the assignment of the Mortgage to U.S. Bank in writing. On February 20, 2013, the assignment of the Mortgage to U.S. Bank was recorded. Appellant failed to make further payments on the Note.

In December 2013, U.S. Bank commenced this mortgage foreclosure action. Following preliminary objections, U.S. Bank filed an amended and a second amended complaint. Appellant's third set of preliminary objections was denied. In December 2014, Appellant filed an answer and new matter. In October 2015, U.S. Bank filed a motion for summary judgment, which was denied in February 2016. The case proceeded to a bench trial on June 8, 2016.

On June 21, 2016, the court issued a memorandum and order granting an *in rem* verdict in favor of U.S. Bank in the amount $1,600,957.43, plus interest, at the *per diem* rate of $196.66, and other costs for foreclosure and sale of the mortgaged property. *See* Trial Ct. Decision, 6/21/2016.

Appellant filed a post-trial motion raising challenges to U.S. Bank's standing, the sufficiency of the Act 91 notice, and proof of the amount due under the loan. In September 2016, the court issued an order accompanied by memorandum opinion denying Appellant's post-trial motion. *See* Trial Ct. Mem., 9/27/2016.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The court issued a response pursuant to 1925(a), asserting that the issues Appellant raises were addressed in its memorandum opinion denying the post-trial motion.

On appeal, Appellant raises the following issues:

1. Whether the Trial Court committed prejudicial error and abused its discretion when ruling on admissibility of and sufficiency of evidence of Plaintiff's claim of Holder of the subject Note. Rule 1925 Statement, No 1.

2. Whether the Trial Court committed prejudicial and reversible error and abused its discretion by admitting into evidence Notes, allonges, and/or mortgage assignments despite the absence of reliable evidence regarding status or authority of alleged conveying entities. Rule 1925 Statement, No 2.

3. Whether the Trial Court committed reversible and prejudicial error and abused its discretion concluding the Defendant lacked standing to challenge named Plaintiff as the "holder", in light of an unexplained discrepancy between the named Plaintiff and the entity named in the last assignment and power of attorney documents. Rule 1925 Statement, No 3.

4. Whether the Trial Court committed prejudicial and reversible error and abused its discretion by admitting into evidence the last mortgage assignment. Rule 1925 Statement, No 4.

5. Whether the Trial Court committed prejudicial and reversible error and abused its discretion when it failed to exclude evidence of Notice of Intent to foreclose. Rule 1925 Statement, No 5.

6. Whether the Trial Court committed prejudicial and reversible error and abused its discretion by admitting into evidence the unreliable and untrustworthy evidence of the alleged amount of indebtedness via testimony of Plaintiff's witnesses, Ms. Benight and Mr. Woods. Rule 1925 Statement, No 6.

7. Whether the Trial Court committed prejudicial and reversible error and abused its discretion when it entered a "verdict" in favor of Plaintiff, and an in rem judgment including "other costs and charges collectible under the mortgage and loan documents". Rule 1925 Statement, No 7.

Appellant's Br. at 4.

Appellant's first issue challenges U.S. Bank's standing to commence the underlying foreclosure action. Appellant contends that the court erred in finding that U.S. Bank had standing to bring the foreclosure action as a holder in due course or real party in interest based on: 1) irregularities in the evidence presented by U.S. Bank; 2) lack of good faith or consideration given for transfers of the note; 3) flaws in the allonges; 3) endorsements that were "foreign to the original note;" 4) "consistently different" versions of the Note attached to the pleadings; and 5) the lack of "original signatures." *See* Appellant's Br. at 19-24; *id.* at 20 (citing in support *J.P. Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258 (Pa. Super. 2013)). Appellant "contests whether the named Plaintiff in this litigation is the same entity to whom the subject Note and Mortgage were allegedly conveyed, because the latter entity is identified as 'Chase Mortgage Finance

Corporation Multi-Class Mortgage Pass-Through Certificates ChaseFlex Trust Series 2006-2' and the named Plaintiff does not include 'Chase Mortgage Finance Corporation' in its name." Appellant's Br. at 15. Appellant claims that the court erred in precluding him from presenting evidence and/or testimony to challenge the authenticity of the allonges presented at trial and securitization based on an alleged "discrepancy between the named [Appellee] and the trust to whom [Appellee] alleged the note and mortgage were conveyed." *See id.* at 25-26. Appellant maintains that harm would result if payment were made to U.S. Bank on an improper basis. *Id.* at 32.

In response, U.S. Bank asserts that it presented sufficient evidence to establish that it was the proper party to bring the foreclosure action via its possession of the original note at trial. *See* Appellee's Br. at 8-10. U.S. Bank contends that no pre-recorded assignment was necessary to file a complaint in a foreclosure action. *See id.* at 11 (citing 13 Pa.C.S. § 3203(b), § 3104(a)); *id.* at 15 (citing *US Bank v. Mallory*, 982 A.2d 986, 993 (Pa. Super. 2009)). Further, U.S. Bank contends that Appellant lacks standing to challenge the assignments of the Mortgage, Power of Attorney or PSA because "[t]he validity of the Assignments of Mortgage, Power of Attorney, and PSA does not impact whether [Appellant] owes his obligations under the Note and Mortgage, and there is no danger of [Appellant] being subject to double liability on the note." Appellant's Br. at 14-15. We agree.

In a mortgage foreclosure action, the mortgagee is the real party in interest. *See Wells Fargo Bank, N.A. v. Lupori*, 8 A.3d 919, 922 n.3 (Pa. Super. 2010); *see also* Pa.R.C.P. 1147 (requiring a plaintiff in a mortgage foreclosure action to name the parties to the mortgage and any assignments). To establish standing in a mortgage foreclosure action, a plaintiff must plead ownership of the mortgage under Rule 1147, as well as possess the right to make demand upon the note secured by the mortgage. *Barbezat*, 131 A.3d at 69. A mortgagee must hold the note secured by a mortgage, as the note and mortgage are inseparable. *Id.* at 75 n.3.

Appellant relies upon *Murray* to support his argument that U.S. Bank does not hold the original note. Appellant argues that *Murray* held that a plaintiff in a mortgage foreclosure action must provide requisite proof of its right to maintain the action, and questionable documents do not furnish sufficient proof. Appellant's Brief at 15 (citing in support *Murray*, 63 A.3d at 1268). *Murray* is distinguishable, as in that case, the plaintiff had not filed of record a copy of the note including the allonge until after the trial court granted summary judgment. *Murray*, 63 A.3d at 1266-1268. The defendant's assertions were based upon a visual inspection and contradictory evidence of record. *Id.* The record here is not in question, and the allonges were provided to the trial court for inspection at trial.

Here, the trial court found "[a]t trial, [Appellee U.S. Bank] produced and made available for inspection the original Note. [U.S. Bank] is in

- 6 -

possession of the original Note." Findings of Fact ("FOF"), 6/21/2016, at ¶ 9. As the court found that U.S. Bank is the holder of the note, the Mortgage can have no separate existence from the note. *See* 13 Pa.C.S. § 9203(g). Therefore, U.S. Bank had standing to bring a foreclosure action based on its possession of note "on demand regardless of who previously held the note." *Bank of America, N.A. v. Gibson*, 102 A.3d 462, 466 (Pa. Super. 2014). Accordingly, we discern no abuse of discretion or error of law by the trial court in making its factual findings with regard to U.S. Bank's standing to bring the foreclosure action as a holder in due course.

In another effort to challenge U.S. Bank's standing, Appellant's second, third, and fourth issues challenge the validity of the assignments. However, these issues are also without merit. In a foreclosure action, the plaintiff must merely own or hold the note to have the right to make a demand for payment and specifically "name the parties to the mortgage and the fact of any assignments." *CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 69 (Pa. Super. 2016) (citing Pa.R.C.P. 1147). "Where an assignment is effective, the assignee stands in the shoes of the assignor and assumes all of his rights." *Id.* (citing *Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1172 (Pa. Super. 1997)). The recording of an assignment is "not a prerequisite to [a bank's] standing to seek enforcement of the mortgage via a mortgage foreclosure action." *Mallory*, 982 A.2d at 994.

> A note endorsed in blank becomes payable to 'bearer' and may
> be negotiated by transfer of possession alone until specially

endorsed. See 13 Pa.C.S.A. §§ 3109(a), 3205(b). The note as a negotiable instrument entitles the holder of the note to enforcement of the obligation. *See* 13 Pa.C.S.A. §§ 3109(a), 3301.

*Barbezat*, 131 A.3d at 69.

As noted by U.S. Bank, Appellant is without standing to challenge the validity of the assignments.[1] If Appellant makes a payment to any assignor, that serves to discharge its obligations under the note. *See* 13 Pa.C.S. § 3602(a). Thus, Appellant cannot demonstrate potential "injury-in-fact" as there is no danger of double liability on the note. *See* Trial Ct. Op., 9/27/2016, at 6. As Appellant is not a party to or a third party beneficiary of the assignment, he lacks standing to challenge the validity of the alonges or assignments. *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvaniva*, 7 A.3d 278, 287 (Pa. Super. 2010); *see also Murray*, 63 A.3d at 1264-65 ("If a borrower cannot demonstrate potential injury from the enforcement of the … note and mortgage by a party acting under a defective assignment, the borrower lacks standing to raise the issue.")

_____

[1] Here, the court found that Linda Tipton, as authorized secretary of JP Morgan Chase Bank endorsed the note as payable to JP Morgan Chase Bank, without recourse. (Findings of Fact ("FOF"), 6/21/2016, at ¶ 4). JP Morgan Chase, N.A. f/k/a The Chase Manhattan Bank endorsed the Note and made it payable to Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation, without recourse. *Id.* at ¶ 5. On the same date, Chase Manhattan Mortgage Corporation endorsed the note and made it *payable in blank, without recourse*. *Id.* at ¶ 6. In August 2006, a second series of identical endorsements were notated on the note from JP Morgan Chase to Chase Manhattan Mortgage, resulting in a "bearer note" payable in blank.

(quoting **In re Walker**, 466 B.R. 271, 285-86 (Bankr. E.D. Pa. 2012)).

Accordingly, Appellant's second, third, and fourth issues are without merit.

In his fifth issue, Appellant contends that U.S. Bank failed to comply with Act 91, which requires a mortgagee who desires to foreclose to send notice to the mortgagor advising the mortgagor of his delinquency. According to Appellant, "Section 18 of the Mortgage requires notice to be issued no less than 30 (thirty) days prior to commencement of an enforcement action or acceleration." Appellant's Br. at 40. In addition, he suggests that U.S. Bank failed to send a second notice before filing its amended complaint. **Id.** at 41.[2]

Instantly, we note that Act 91 merely requires that notice be sent "*at least* thirty (30) days before the mortgagee…begins any legal action, including foreclosure, for money due under the mortgage obligation or to take possession of the mortgagor's security." 35 P.S. § 1680.403c(2)(i). Thus, the premise of Appellant's argument is incorrect. Nevertheless, as noted by the trial court and U.S. Bank, this claim is waived based on Appellant's failure to raise any argument relating to notice via preliminary objections in response to the amended complaint. **See** Appellee's Br. at 17

---

[2] In support, Appellant relies on **HSBC Bank, NA v. Donaghy**, 101 A.3d 129, 134 (Pa. Super. 2014), in which this Court held that whether the mortgagor had complied with Act 91 created a factual dispute that precluded summary judgment. **Donaghy**, 101 A.3d at 134. Because Appellant went to trial in this case, **Donaghy** is inapposite.

(citing in support *Roberts v. Estate of Pursely*, 700 A.2d 475, 479 (Pa. Super. 1997) (citing Pa.R.C.P. 1028(a)(2) (party must raise failure of a pleading to conform to law or rule of court by preliminary objection); Pa.R.C.P. 1032(a) (party waives all defenses and objections which are not presented by preliminary objection, answer or reply)).

The notice required by Act 91 is a procedural requirement that the mortgagee must satisfy before filing its complaint; however, "a defective Act 91 notice does not deprive the courts of subject matter jurisdiction." *Beneficial Consumer Discount Co. v. Vukman*, 77 A.3d 547, 203 (Pa. 2013). Accordingly, Appellant waived this argument by failing to timely raise it in his preliminary objections in response to U.S. Bank's second amended complaint. *See id.*; *see also* Pa.R.C.P. 1028(a)(2).

In his sixth and seventh issues, Appellant contends that the court erred in admitting evidence at trial with respect to the amount due. Appellant maintains that the testimony and/or business records did not fall within the business records exception to the hearsay rule. *See* Appellant's Br. at 42-51 (citing Pa.R.Evid. 803(6)). In support of this argument, he challenges the court's factual findings regarding the accuracy of information entered into data systems, the quality control protocols, authority to enter calculations for the charges, and the witnesses' lack of personal responsibility for maintaining the records. *Id.*

Here, the trial court's opinion summarizes its reasons in support of its decision to admit evidence under the business records exception. **_See_** TCO at 7-8 (discussing Pa.R.E. 803(6), 42 Pa.C.S. § 6108). As the trial court's findings are supported by the record, we discern no abuse of discretion. We adopt the relevant portion of the trial court's analysis as our own for purpose of further appellate review. **_See_** Trial Ct. Op., 9/27/2016, 7-10.[3]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/2017

---

[3] Specifically, U.S. Bank presented evidence of the amount due through testimony of representatives from both servicers of the Mortgage, Sherry Benight on behalf of SPS, and Samuel Woods on behalf of JP Morgan Chase. Based on their testimony, the court concluded that the records of the amount due were kept as a regularly conducted business activity and overruled Appellants' objections to the exhibits admitted into evidence.

US BANK NATIONAL ASSOCIATION, AS : IN THE COURT OF COMMON PLEAS
TRUSTEE IN TRUST FOR AND F/B/O
THE CERTIFICATE HOLDERS OF : CHESTER COUNTY, PENNSYLVANIA
MULTI-CLASS MORTGAGE PASS-
THROUGH CERTIFICATES CHASEFLEX : CIVIL ACTION – FORECLOSURE
TRUST, SERIES 2006-2
                Plaintiff, : NO. 2013-11842
        v.
DURAND J. O'MEARA A/K/A DURAND :
O'MEARA
           Defendant :

Anita Murray, Esquire, on behalf of Plaintiff
Anita Fulwiler O'Meara, Esquire, on behalf of Defendant

## MEMORANDUM OPINION AND ORDER

Presently before us for decision is the post-trial motion of Defendant, Durand J. O'Meara ("Defendant"). Plaintiff, US Bank National Association, as Trustee in Trust for and f/b/o the Certificate Holders of Multi-Class Mortgage Pass-Through Certificates Chaseflex Trust, Series 2006-2 ("US Bank")[1], filed a complaint in mortgage foreclosure on December 3, 2013 against Defendant. Following preliminary objections, an amended complaint was filed March 11, 2014. Following a second set of preliminary objections, a second amended complaint was filed on May 22, 2014. After a third set of preliminary objections was overruled, Defendant filed an answer with new matter on December 23, 2014.

A bench trial was held on June 8, 2016. US Bank appeared and presented evidence through Sherry Benight, an employee of Select Portfolio Servicing ("SPS")[2], and Samuel Woods, an employee of JP Morgan Chase Bank, N.A. ("JP Morgan Chase")[3]. (N.T. 8:8-9, 64:1-5) Defendant did not appear, but his counsel was present to argue his case and cross-examine US Bank's witnesses.

---

[1] The Trustee is U.S. Bank National Association. The Trust is ChaseFlex Trust, Series 2006-2.

[2] SPS is the current servicing agent and attorney-in-fact for US Bank. (N.T. 13:1-9, Exh. P-1)

[3] JP Morgan Chase is the Master Servicer for US Bank. Prior to appointing SPS as Sub-Servicer, JP Morgan Chase was the servicing agent and attorney-in-fact for US Bank. (N.T. 13:10-21, Exh. P-1)

The case arises from a mortgage ("Mortgage") securing real property located at 915 Buck Run Road, Coatesville, Pennsylvania ("Property") entered into by Defendant and Stonebridge Bank on May 17, 2006. (Exh. P-3) The Mortgage was recorded on July 6, 2006 in the Office of the Recorder of Deeds, Chester County, in Mortgage Book No. 6889, Page 738. (Exh. P-3) The Mortgage secured Defendant's obligations under a promissory note ("Note") given to Stonebridge Bank also on May 17, 2006 in consideration of a loan to Defendant in the amount of $1,045,000. (Exh. P-2) Under the fixed interest rate (6.875%) Note, Defendant promised to pay the Note Holder[4] monthly installment payments commencing July 1, 2006 and continuing each month thereafter until the loan was paid in full with a final payment due June 1, 2036. For the first 120 months, payments were $5,986.98 (interest only) and thereafter rose to $8,023.66. (Exh. P-2, ¶ 3) The Note included a 15-day grace period for each payment and provided for assessment of a 5% late fee for overdue payments of principal and interest. (Exh. P-2, ¶ 6) Under the Note, Defendant would be in default for failure to pay the full amount of each monthly payment on its due date. (Exh. P-2, ¶ 6). Defendant failed to make the monthly payment due on June 1, 2010. Defendant has continued to be in default for failure to make monthly payments due each and every month thereafter. (N.T. 37:10-17, 38:8-20, Exh. P-10a)

By written mortgage assignment dated May 17, 2006, Stonebridge Bank confirmed the assignment of the Mortgage to JP Morgan Chase and on July 6, 2010 that assignment was recorded in the Office of the Recorder of Deeds, Chester County, Mortgage Book No. 6889, Page 756. (Exh. P-4) By written mortgage assignment dated December 31, 2012, JP Morgan Chase confirmed the assignment of the Mortgage to US Bank[5] and on

---

[4] Stonebridge Bank is identified in the Note as the "Lender." (Exh. P-2, ¶ 1) The Note provides: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (Exh. P-2, ¶ 1)

[5] The written mortgage assignment identified the assignee as "U.S. Bank National Association, as Trustee for Chase Mortgage Finance Corporation Multi-Class Mortgage Pass-Through Certificates ChaseFlex Trust, Series 2006-2." Thus, US Bank is the Trustee and the Trust is ChaseFlex Trust, Series 2006-2. The plaintiff herein is the assignee under this written mortgage assignment recorded December 31, 2012. (Exh. P-5)

2

February 20, 2013 that assignment was recorded in the Office of the Recorder of Deeds, Chester County, Mortgage Book No. 8467, Page 1127. (Exh. P-5)

At trial, the original Note and attached allonges were in the possession of US Bank's attorney and were presented for inspection. (N.T. 14:5-7, Exh. P-2)[6] Most recently, before being delivered to US Bank's attorney, and when this action was commenced, the original Note and allonges were physically possessed by SPS, US Bank's servicing agent and attorney-in-fact. (N.T. 14:24-15:24, Exh. P-1) The Note contained the following undated endorsement on its last page:

> Pay to the Order of JPMorgan Chase Bank, NA
> Without Recourse
> By JPMorgan Chase Bank, NA
> Attorney In Fact for Stonebridge Bank
> By /s/ *Linda Tipton*
> /Its Authorized Assistant Secretary

(N.T. 17:3-4, Exh. P-2)

A series of allonges were attached to the original Note. The first allonge set forth:

> PAY TO THE ORDER OF:
>
> Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation
>
> without recourse this 7/25/2006
>
> JP Morgan Chase, N.A. f/k/a The Chase Manhattan Bank an Ohio Corporation

(N.T. 17:5-7, Exh. P-2)

The second allonge set forth:

> PAY TO THE ORDER OF:
>
>
> without recourse this 7/26/2006
>
> Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation a Delaware Corporation

(N.T. 17:8-10, Exh. P-2)

---

[6] Exhibit P-2 is an exact copy of the original Note and allonges. The original Note and allonges were retained by US Bank's attorney at the conclusion of trial.

3

The third allonge set forth:

PAY TO THE ORDER OF:

> Chase Home Finance, LLC s/b/m Chase
> Manhattan Mortgage Corporation

without recourse this 8/24/2006

> JP Morgan Chase Bank, N.A. f/k/a The Chase Manhattan Bank
> an Ohio Corporation

(N.T. 17:11-13, Exh. P-2)

The fourth allonge set forth:

PAY TO THE ORDER OF:

without recourse this 8/24/2006

> Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage
> Corporation a Delaware Corporation

(N.T. 16:6-10, 17:14-15, Exh. P-2)

On September 17, 2010, following default, US Bank caused Act 91 Notices to be sent to Defendant and his spouse, also his attorney herein, Anita O'Meara, who was at the time on the deed to the Property. (Exh. P-6) When no further payments were made, US Bank commenced this action on December 3, 2013.

Defendant's post-trial motion raises challenges to US Bank's standing, the pre-foreclosure notice and the proof offered of the amount due under the loan.

Standing

Defendant challenges US Bank's standing to bring this mortgage foreclosure action and focuses primarily on purported irregularities in US Bank's ownership of the Note. Defendant contends that US Bank cannot assert standing based on the failure of the final two allonges, both dated August 24, 2006, to convey any interest in the Note to US Bank. Defendant also contends that a failure to produce original allonges at trial is fatal to US Bank's case. With regard to both of these claims, there is no evidence to support Defendant's view. US Bank's witness, Ms. Benight, testified as to the order in which the allonges were attached to the Note. (N.T. 15:25-16:10, 16:24-17:15; Exh. P-2) The final allonge is endorsed in blank. (N.T. 17:14-15, Exh. P-2) Ms. Benight's testimony was not

4

challenged. Only Defendant's attorney stated at trial that the two final allonges are copies, not originals. Ms. Benight was not questioned about their status.

Defendant fails to address US Bank's strongest claim to standing, possession of the Note. The original Note was produced at trial by US Bank. Regardless of US Bank's status under the allonges, US Bank is a holder through possession of the Note. The Note is a negotiable instrument governed by Article 3 of the Uniform Commercial Code. JP Morgan Chase Bank, N.A. v. Murray, 2013 PA Super 55, 63 A.3d 1258, 1264 (Pa. Super. Ct. 2013). A party who possess the Note is entitled to enforce it in an *in rem* mortgage foreclosure action. "[T]he chain of possession by which [a party] c[o]me[s] to hold the [n]ote [is] immaterial to its enforceability by [the party]." Id., 63 A.3d at 1266. US Bank as holder of the Note is entitled to make demand upon and to enforce Defendant's obligations thereunder.

Defendant also raises an issue concerning US Bank's rights as assignee of the Mortgage, claiming that the final assignment of the Mortgage was not made to US Bank. Contrary to Defendant's claim, the final assignment of the Mortgage was made to US Bank as Trustee of the ChaseFlex Trust, Series 2006-2, the same entity as plaintiff herein. (N.T. 26:20-22, Exh. P-5) Furthermore, Defendant lacks standing to challenge any defect in the assignment of the Mortgage. One who is not a party to or a third party beneficiary of a contract lacks standing to argue that the contract is invalid. Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania, 2010 PA Super 175, 7 A.3d 278, 287 (Pa. Super. Ct. 2010). Only those in privity of contract or with some legal right existing at common law or by statute have standing to challenge the validity of an assignment. Rottmund v. Cont'l Assur. Co., 761 F.Supp. 1203, 1209 (E.D. Pa. 1990). When the defendant in BAC Home Loans Servicing, L.P. v. Viola, 2014 WL 786387 (Pa.Com.Pl., 2014 ) sought to challenge the validity of the assignment of both the note and mortgage in a foreclosure action, the trial court ruled:

> if a defendant cannot demonstrate potential injury from the enforcement of the Note and the Mortgage by a party acting under an alleged "defective assignment," the defendant lacks standing to challenge the assignment. In re Walker, 466 B.R. 271 (Bankr.E.D.Pa. 2012); JP Morgan Chase Bank, N.A. v. Murray, 63 A.3d 1258 (Pa. Super. Ct. 2013). Here, Appellant lacks any "injury in fact" because the Note is a negotiable instrument and Appellee

5

is the holder. Therefore, even if the assignment to BAC Home Loans Servicing were somehow defective and the assignor retained ownership of the Note and the Mortgage, any payments Appellant made or makes to Appellee will discharge her liability under the Note. Id.; 13 Pa. C.S. § 3602(a). There is no danger of Appellant being subject to double liability on the Note. Id.

Id., *5, aff'd 108 A.3d 123. For the same reasons, Defendant cannot challenge US Bank's rights as assignee of the Mortgage here.

Finally, Defendant attempts to challenge US Bank's right to proceed as plaintiff based upon the exhibits to the Limited Powers of Attorney appointing JP Morgan Chase as Master Servicer and SPS as Sub-Servicer. These exhibits reference Pooling and Servicing Agreements. (Exh. P-1) However, Defendant lacks standing to challenge a contract to which he is neither a party nor a third party beneficiary. Whether he challenges the Limited Power of Attorney or the Pooling and Servicing Agreement, Defendant lacks standing. In re Walker, 466 B.R. at 285–287 (Bankr. E.D. Pa. 2012)(debtor was without standing to challenge whether the creditor had violated a pooling and servicing agreement and consequently had acted under a defective assignment of the note and mortgage); The Bank of New York Mellon v. O'Quinn, 2016 WL 3544639 (Pa.Com.Pl., 2016), *2. Furthermore, the Trust at issue, ChaseFlex Trust Series 2006-2, is identified as one of the assets governed by the Pooling and Servicing Agreements referenced in the exhibits to the Limited Powers of Attorney. (N.T. 41:16-45:13, Exh. P-1)

*Pre-Foreclosure Notice*

Defendant was served with an Act 91 Notice ("Notice").[7] (Exh. P-6) The Notice was sent by certified mail to Defendant on September 17, 2010 and Defendant subsequently signed for receipt of the Notice. The action in mortgage foreclosure was commenced December 3, 2013.

Defendant cites to ¶¶ 15, 18, 20 and 22 of the Mortgage and indicates that the Notice was somehow deficient under these sections. However, Defendant fails to offer much detail of any alleged deficiency. Defendant seems to argue that the Notice was not

---

[7] US Bank was not obligated to provide an Act 6 Notice because the original principal balance of the mortgage was more than the original principal balance threshold of the Act. 41 P.S. § 101, 403.

6

timely under the terms of the Mortgage and references a requirement that the Notice must issue "no less than 30 (Thirty) days prior to commencement of an enforcement action...". (Post-Trial Motion, ¶30) The Notice issued more than three years before the foreclosure action was commenced with the filing of a complaint and was, therefore, issued no less than thirty days prior to the commencement of the action. Contrary to Defendant's argument, the filing of the second amended complaint was not the commencement of an action. The cases cited by Defendant, Wells Fargo Bank N.A. v. Spivak, 2014 PA Super 250, 104 A.3d 7 (Pa. Super. Ct. 2014)(lender must send a new Act 6 notice prior to commencing a second foreclosure action) and HSBC Bank, NA v. Donaghy, 2014 PA Super 215, 101 A.3d 129 (Pa. Super. Ct. 2014)(summary judgment may not be entered where there remains a genuine issue of material fact as to whether the lender complied with the notice provisions of the mortgage agreement) are inapposite. To the extent Defendant argues that US Bank failed to comply with notice requirements in the Mortgage, the evidence does not support Defendant's claim. To the extent Defendant argues that US Bank failed to comply with statutory requirements, Defendant waived this claim by failing to raise the claim by preliminary objection. Beneficial Consumer Disc. Co. v. Vukman, 621 Pa. 192, 77 A.3d 547, 553 (2013)(Act 91 requirements are procedural, not jurisdictional); Chase v. Hodge, 2014 WL 1710849,*2 (where a procedural issue can be raised by preliminary objection, failure to do so constitutes waiver).

## Proof of Sum Due

Defendant's final claim addresses the quality of the proof of the amount due under the loan. Defendant alleges that we erred in admitting evidence of his debt as a business record exception to the hearsay rule under Pa.R.E. 803(6) and/or as a uniform business record under 42 Pa. C.S.A. § 6108.

Pa.R.E. 803(6) provides:

The following are not excluded by the rule against hearsay...

**(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

7

(B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;   —

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

The Uniform Business Records as Evidence Act provides:

**(b) General rule.**—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

**(c) Definition.**—As used in this section **"business"** includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

42 Pa.C.S.A. § 6108.

US Bank elicited testimony from a representative of each of its servicers. Ms. Benight testified as a contested default case manager for SPS to establish the amount due as a result of Defendant's default. (N.T. 8:8-9:2) Ms. Benight testified that SPS, as loan servicer, is responsible for applying payments received from borrowers and making payments as needed to maintain the property. SPS assumed these responsibilities from JP Morgan Chase on August 1, 2013. (N.T. 9:3-10, 24:1-15, Exh. P-8) Ms. Benight testified that SPS uses an industry standard computer record keeping program known as Black Knight Financial Services ("Black Knight") to collect and store information relevant to the loans it services, including Defendant's loan. (N.T. 9:11-10:1, 51:22-52:2) When SPS took over Defendant's loan, the regularly conducted boarding process included reviewing addresses, insurance, amounts due, amortization schedules, the note, the mortgage and the prior servicer's records. (N.T. 10:2-11:3) Ms. Benight was familiar with Defendant's obligations under the mortgage and she knew which payments were escrowed, how

8

insurance was handled and how late payment fees accrued. (N.T. 21:19-22:18, 23:1-15, 22:19-25)

Ms. Benight introduced and described a Pay3 Report, which is a record of interest due on Defendant's loan. (N.T. 29:24-30:19, 55:18-22, Exh. P-9a) Ms. Benight testified that the Pay3 Report is a record maintained by SPS in the regular course of business with information recorded by someone having knowledge of the event or activity being reported and that recording took place at or near the time received. (N.T. 30:3-13) The Pay3 Report generated a payoff on Defendant's loan as of June 8, 2016, the date of trial. (N.T. 30:20-31:2, Exh. P-9a)

Ms. Benight also introduced and described a Pay4 Report, which is another record regularly kept in the course of SPS's business. (N.T. 31:3-8, Exh. 9-a) The Pay4 Report is produced from information recorded by someone having knowledge of the event or activity being reported and that the information is recorded at or near the time received. (N.T. 31:5-14, Exh. P-9a) The Pay4 Report was also generated for June 8, 2016. (N.T. 31:15-20; Exh. P-9a) Ms. Benight explained that nature of the items contained within the Pay4 Report, such as escrow advance and recoverable balance. (N.T. 31:21-32:6; Exh. P-9a)

Ms. Benight was familiar with and testified about the SPS Payment History Report, also routinely created and maintained in the normal course of SPS's business at or near the time of the event or activity it record by someone with knowledge or from information transmitted by someone having knowledge of the event or activity being reported (N.T. 34:10- 35:1, Exh. P-10a) The Payment History Report shows all payments received and all payments made by SPS. (N.T. 36:3-11; 55:18-25, Exh. P-10a) According to Ms. Benight, the first entry is dated August 8, 2013 and reflects information from when the loan was boarded by SPS upon receipt from JP Morgan Chase. (N.T. 36:12-21) Ms. Benight testified that the boarded figure, $37,518.72, represented the escrow advance made by JP Morgan Chase and that based on the report, $1,044.061.80 was the principal balance when the debt was received from JP Morgan Chase. (N.T. 36:22-37:9)

Ms. Benight testified that she was familiar with the exhibits produced by SPS, having reviewed the documents on paper as well as on her computer and that she did not personally input data into the Black Knight program, but employees within the payment

9

department, escrow department and accounting department did so. (N.T. 52:3-53:22) Ms. Benight did not supervise data entry, but at every point in the process there are supervisors and managers with oversight responsibilities. (N.T. 60:18-61:12, 62:17-63:4) Ms. Benight testified that the total amount due at the time of trial, based on these reports, was $1,600,957.43, consisting of interest, principal, accumulated late charges, escrow balance and recoverable balance. (N.T. 32:9-33:13, Exh. P-9a).

Mr. Woods, a mortgage banking research officer, testified as a representative of Master Servicer JP Morgan Chase. (N.T. 64:1-18) Mr. Woods was familiar with how JP Morgan Chase generated its detailed transaction history, also using the Black Knight program. (N.T. 65:17–66:13; Exh P-10) Mr. Woods testified that records are routinely created and maintained in the course of JP Morgan Chase's business activities at or near the time of the event or activity being reported by someone with knowledge or from information transmitted by someone having knowledge who reports the same in regular course of business. (N.T. 66:21-67:10) Mr. Woods does not handle data entry or supervise those who do. (N.T. 71:7-12, 72) Mr. Woods testified that JP Morgan Chase, as servicer, was responsible for receiving payments, making escrow payments of taxes and insurance, and mortgage insurance, if needed, and providing customer service, as needed. (N.T. 65:1-7) Mr. Woods testified that the JP Morgan Chase payment history dates back to August 25, 2006 and shows transfer to SPS on August 8, 2013 with the escrow advance and principal balance at transfer matching that which SPS boarded. (N.T. 68:6-24, Exh. P-10) Mr. Wood testified that he prepared for his testimony by reviewing system records, the transaction history and system notes. (N.T. 74:19-21)

Based upon the foregoing, the testimony and documents introduced through SPS and JP Morgan Chase were admitted into evidence. Notably at the time of trial, Defendant failed to object as testimony was being elicited from Ms. Benight and Mr. Woods. To the extent Defendant has preserved any issue concerning the documents by objecting generally to all exhibits offered by US Bank, we have explained the basis upon which they were admitted. (N.T. 80:11-17)

10

For all of the reasons stated, we enter this

2013-11842

FILED SEP 27 2016

4:16 P.m.

**ORDER**

AND NOW, this 27th day of September, 2016, upon consideration of Defendant's Post-Trial Motion and following argument, it is hereby ORDERED and DECREED that the Motion is DENIED.

BY THE COURT:

_____
EDWARD GRIFFITH, J.

11