J-S84034-16

2017 PA Super 280

| | |
|---|---|
| THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2007-HY6 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-HY6 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RICHARD H. BROOKS, JR., | |
| Appellant | No. 1362 EDA 2016 |

Appeal from the Order Entered April 1, 2016
in the Court of Common Pleas of Northampton County Civil Division
at No(s): C-48-CV-2012-2395

BEFORE: OLSON, SOLANO, and FITZGERALD,[*] JJ.

OPINION BY FITZGERALD, J.:                    **FILED AUGUST 28, 2017**

Appellant, Richard H. Brooks, Jr., appeals from the order granting summary judgment in favor of Appellee, The Bank of New York Mellon, in this mortgage foreclosure action. Appellant argues that Appellee's servicer failed to respond properly to Appellant's loss mitigation application in violation of 12 C.F.R. § 1024.41(g) ("Regulation X"). We reverse the trial court's order and remand for further proceedings.

The record provides the following. In March 2007, Appellant obtained a loan from Countrywide Home Loans, Inc. secured by a mortgage in favor of Mortgage Electronic Registration Systems, Inc., as Countrywide's

---

[*] Former Justice specially assigned to the Superior Court.

nominee, upon Appellant's residence in Easton, Pennsylvania. In September 2011, Countrywide assigned the mortgage to Appellee. In late 2010, Appellant defaulted upon his mortgage payments.

In March 2012, Appellee instituted the present foreclosure action. On May 13, 2015, while the action remained pending, Appellant, through his counsel, submitted an application for loss mitigation ("Application") to Select Portfolio Servicing, Inc. ("SPS"), the servicer of the loan for Appellee. The Application requested a "short payoff" of the mortgage, which Appellant defined as a "lump sum payoff of the mortgage for less than the outstanding balance of the mortgage." Memorandum In Support Of Appellant's Response To Mot. For Summ. J., at 2. The Application contained multiple documents and additional information relating to Appellant's financial status. Appellant's Response To Mot. For Summ. J., Ex. A.

In an email to SPS on June 24, 2015, Appellant's counsel stated that he had not received a response to the Application and inquired about its status. By email to SPS on July 15, 2015, counsel again stated that he had received no response. On August 4, 2015, still having received no response, counsel telephoned SPS. During the conversation, SPS requested additional documentation to evaluate the Application. On August 12, 2015, counsel forwarded four additional documents by email to SPS relating to Appellant's financial status. *Id.*, Ex. D. Counsel received no further request from SPS for information or documentation.

In a letter dated August 26, 2015, SPS stated: "We determined that we are unable to assist you in this proposed arrangement because the required documentation needed to proceed was not received." *Id.*, Ex. E. On September 2, 2015, counsel responded to SPS as follows: "By email to you on August 12, 2015, I forwarded all additional documents requested by SPS in support of my client's request for a short payoff. I am unaware of any further documentation needed from the borrower to process his request. Please advise immediately." *Id.*, Ex. F. SPS never responded to the email or identified what documentation was missing.

In January 2016, Appellee moved for summary judgment. Appellant responded that Appellee failed to comply with loss mitigation procedures under Regulation X.

On April 1, 2016, the trial court entered summary judgment in favor of Appellee. On April 28, 2016, Appellant timely appealed to this Court.[1]

---

[1] On May 3, 2016, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement within twenty-one days, or by May 24, 2016. On May 25, 2016, one day after the deadline, the prothonotary docketed Appellant's Rule 1925 statement.

On April 24, 2017, we remanded this case to the trial court to determine whether Appellant timely filed his Rule 1925 statement. On May 26, 2017, the trial court determined that Appellant failed to timely file his Rule 1925 statement. On June 19, 2017, however, the trial court vacated its May 26, 2017 order and determined that Appellant timely filed his Rule 1925(b) statement.

We concur with the trial court's June 19, 2017 order. The record includes a Form 3817 Certificate of Mailing demonstrating that counsel for Appellant

Appellant raises three issues in this appeal:

A. Whether [Appellant] asserted sufficient facts and provided adequate documentation to establish that he submitted a complete loss mitigation application, that [Appellee]'s servicer failed to respond properly, and that [Appellee] was acting in violation of [Regulation X] by moving for summary judgment?

B. Whether [Appellant] was required to utilize the process under Regulation X for appealing a denial of a loss mitigation application when the servicer never sent [Appellant] a notice, as required by 12 C.F.[R.] § 1024.41(c)(1)(ii), stating the servicer's determination of which loss mitigation options, if any, it will offer, and notifying [Appellant] of his right to appeal, the amount of time to appeal, and any requirements for making an appeal?

C. Whether [Appellant] was required to utilize the error resolution procedures of Regulation X prior to raising the servicer's noncompliance with Regulation X in opposition to [Appellee] moving for foreclosure judgment?

Appellant's Brief at 2.

Our standard of review in an appeal from an order granting summary judgment is well settled:

[o]ur review of the trial court's grant of summary judgment is plenary. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We must view the

---

mailed his Rule 1925 statement on May 23, 2017, one day before the deadline. Accordingly, the Rule 1925 statement was timely filed on May 23, 2017. **See** Pa.R.A.P. 1925(b)(1) (filing of Rule 1925 statement "shall be complete on mailing" if appellant obtains Form 3817 Certificate of Mailing from which date of deposit can be verified). Accordingly, we proceed to the merits of this appeal.

record in the light most favorable to the opposing party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

*412 North Front Street Assocs., LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 660 (Pa. Super. 2016) (citation omitted).

In his first argument, Appellant contends that he submitted a complete loss mitigation application, that Appellee's servicer failed to respond properly, and that Appellee violated Regulation X by seeking summary judgment. We agree with Appellant that Appellee is not entitled to summary judgment on this record.

Effective January 10, 2014, pursuant to the federal Dodd-Frank Act, the Consumer Financial Protection Bureau ("CFPB") adopted new regulations relating to mortgage servicing. *See* Pub. L. No. 111-203, 124 Stat. 1376 (sections 1461-1465) (July 21, 2010). The new regulations, entitled "Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X)," are codified at 12 C.F.R. § 1024.30 *et seq*. "Regulation X prohibits, among other things, a loan servicer from foreclosing on a property in certain circumstances if the borrower has submitted a completed loan modification, or loss mitigation, application." *Miller v. Bank of New York Mellon*, 228 F.Supp.3d 1287, 1290 (M.D.Fl. 2017) (citation omitted).

Regulation X requires servicers[2] to follow specified loss mitigation procedures for a mortgage loan secured by a borrower's principal residence. A "loss mitigation application" is "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for a loss mitigation option." 12 C.F.R. § 1024.31. A "loss mitigation option means an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." *Id.*

If a borrower submits an application for a loss mitigation option more than forty-five days prior to a foreclosure sale, the servicer is generally required to acknowledge the receipt of the application in writing within five days and notify the borrower whether the application is complete **and, if not, inform the borrower of the additional documents and information needed to complete the application**. *See id.* at § 1024.41(b)(1), (b)(2)(i) and (ii). The notice shall also state a reasonable date by which the borrower should submit the documents and information. *Id.* at § 1024.41(b)(2)(ii). The servicer must exercise reasonable diligence

---

[2] Regulation X implicitly treats servicers as agents of lenders. Similarly, in mortgage foreclosure proceedings, we have attributed the servicer's acts to the lender. *See HSBC Bank, NA v. Donaghy*, 101 A.3d 129, 135-36 (Pa. Super. 2014) (summary judgment in lender's favor reversed due to servicer's failure to comply with notice provisions in mortgage prior to initiating foreclosure action). Accordingly, in the present case, we deem the acts of Appellee's servicer, SPS, to be attributable to Appellee.

in obtaining documents and information to complete the application. ***Id.*** at § 1024.41(b)(i).

If a borrower submits all the missing documents and information as stated in the notice, or if no additional information is requested, the application shall be considered facially complete for purposes of subsections 1024.41(d), (e), (f)(2), (g) and (h). ***See id.*** at § 1024.41(c)(2)(iv). If the servicer later discovers additional information or corrections are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete until the borrower has a reasonable opportunity to complete the application. ***Id.***

For a complete loss mitigation application received more than thirty-seven days before a foreclosure sale, the servicer is required to evaluate the borrower, within thirty days of receiving the complete application, for all loss mitigation options for which the borrower may be eligible in accordance with the investor's eligibility rules. ***Id.*** at § 1024.41(c)(1)(i). The servicer must provide the borrower with a written decision, including an explanation of the reasons for denying the borrower for any loan modification option offered by an owner or assignee of a mortgage loan. ***Id.*** at § 1024.41(c)(1)(ii).

If a borrower submits a complete application for a loss mitigation option after the foreclosure process has commenced but more than thirty-seven days before a foreclosure sale, a servicer may not move for a

foreclosure judgment or order of sale or conduct a foreclosure sale, until one of the following three conditions has been satisfied: (1) the servicer has sent the borrower a notice that the borrower is not eligible for any loss mitigation option, and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or (3) the borrower fails to perform under an agreement on a loss mitigation option. *Id.* at § 1024.41(g)(1)-(3).

Here, construed in the light most favorable to Appellant, the party opposing summary judgment, a genuine issue of material fact exists as to whether Appellee violated Regulation X, thus precluding foreclosure on Appellant's property. The record reflects that (1) on May 13, 2015, in support of Appellant's Application for a short payoff, Appellant's attorney sent Appellee's servicer a series of documents and information requested by the servicer;[3] (2) when Appellant's attorney did not hear from the servicer, he first wrote to the servicer and then contacted the servicer by telephone; (3) on August 4, 2015, the servicer requested several more documents during a phone conversation; and (4) on August 12, 2015, Appellant's attorney forwarded all requested documents to the servicer. On August 26,

---

[3] There is no dispute that Appellant timely submitted his Application. *See* 12 C.F.R. § 1041.41(g) (defining timeliness requirements for loss mitigation applications after foreclosure proceedings have begun).

2015, despite Appellant's diligent efforts to provide all documents and information, the servicer rejected Appellant's Application "because the required documentation needed to proceed was not received." Appellant's Response to Mot. For Summ. J., Ex. E. The servicer failed, however, to identify which documents Appellant neglected to provide.

When an applicant submits an incomplete loss mitigation application, Regulation X requires servicers to notify the applicant which additional documents or information are necessary to complete the application and provide a reasonable deadline for submitting such documents and information. *See* 12 C.F.R. § 1024.41(b)(2)(i) and (ii); *Miller*, 228 F.Supp.3d at 1290. Foreclosure is not permissible unless and until the servicer complies with this procedure. *Id.* In this case, viewed in the light most favorable to Appellant, the evidence indicates that Appellee's servicer rejected Appellant's Application on the pretext that Appellant failed to provide all necessary documentation without identifying which additional documents and information were necessary to complete the application and the deadline for submitting such documents and information. In other words, Appellant appears to have submitted a complete loss mitigation application,[4] but Appellee's servicer simply brushed it aside in violation of

---

[4] Appellee concedes that lenders cannot pursue foreclosure judgments when there has been a complete loss mitigation application that remains pending. Appellee's Brief at 7. Analogously, we have held in at least one instance that a mortgagor's failure to comply with federal regulations constitutes an

Regulation X. Because the servicer's violation of Regulation X is attributable to Appellee, *see* n.2, *supra*, the trial court erred by granting summary judgment to Appellee.

Appellee argues that Regulation X is inapplicable to this case, because short payoff applications such as Appellant's Application do not fall within the CFPB's official interpretation of a "loss mitigation option." Appellee's Brief at 8. We disagree. The CFPB's "Official Bureau Interpretation" provides:

> Loss mitigation options include temporary and long-term relief, including options that allow borrowers who are behind on their mortgage payments to remain in their homes or to leave their homes without a foreclosure, such as, **without limitation**, refinancing, trial or permanent modification, repayment of the amount owed over an extended period of time, forbearance of future payments, short-sale, deed-in-lieu of foreclosure, and loss mitigation programs sponsored by a locality, a State, or the Federal government.

Appellee's Reply Brief In Further Support of Mot. For Summ. J., Ex. 1, at 4 (emphasis added). The phrase "without limitation" demonstrates that this list of loss mitigation options is not exclusive. Appellee admits as much in its brief. Appellee's Brief at 8 ("that list does not purport to be exclusive"). Since this list is merely illustrative instead of exhaustive, we conclude that a short payoff is a viable loss mitigation option under Regulation X.

---

affirmative defense to a foreclosure action. ***See Fleet Real Estate Funding Corp. v. Smith***, 530 A.2d 919, 923 (Pa. Super. 1987) (mortgagor on mortgage insured by Federal Housing Administration could raise as equitable defense to foreclosure mortgagee's failure to comply with forbearance provisions in regulations and handbook issued by the Department of Housing and Urban Development).

Because we find Appellant's first argument dispositive, we need not address his second and third arguments in this appeal.

Order reversed. Case remanded for further proceedings in accordance with this opinion. Jurisdiction relinquished.

Judge Solano joins.

Judge Olson files a concurring opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2017