J. A16029/17 & J. A16030/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF: W.M., SR., AND D.M. | : | |
| | : | No. 124 WDA 2017 |

Appeal from the Order, December 15, 2016,
in the Court of Common Pleas of Westmoreland County
Civil Division at No. CP-65-DP-64-2014

| | | |
|---|---|---|
| W.M., SR., AND D.M., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | No. 11 WDA 2017 |
| WESTMORELAND COUNTY | : | |
| CHILDREN'S BUREAU | : | |

Appeal from the Order Entered December 1, 2016,
in the Court of Common Pleas of Westmoreland County
Civil Division at No. 2245 of 2015-D

BEFORE: STABILE, J., FORD ELLIOTT, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED SEPTEMBER 11, 2017**

W.M., Sr., and D.M. appeal from the December 1, 2016 order entered

in the Court of Common Pleas of Westmoreland County at case number

2245 of 2015-D ("Custody Case") that awarded sole legal and physical

custody of M.M., appellants' paternal granddaughter, to the Westmoreland

_____

* Retired Senior Judge assigned to the Superior Court.

County Children's Bureau (the "Agency"). Appellants also appeal from that part of the December 15, 2016 order entered in the Court of Common Pleas of Westmoreland County at case number CP-65-DP-64-2014 ("Dependency Case") that ordered the termination of appellants' intervenor status in M.M.'s Dependency Case and also terminated appellants' monthly supervised visitation with M.M. At the outset, we note that we have consolidated appellants' appeals because the underlying proceedings are inextricably linked in that the Dependency Case and the Custody Case concern the best interest of one child -- M.M. After careful review, we affirm both orders and remand for entry of the termination of visitation order on the Custody Case docket.

The trial court summarized the factual history of this case as follows:

> This matter stems from [the] underlying [Dependency Case]. The minor child, M.M., was born on September [], 2013. The Appellants, W.M., Sr., and D.M. are the Paternal Grandparents of the minor child. At the time of birth, M.M.'s biological mother was incarcerated on drug related charges, and the child was born addicted to methadone. Throughout the child's life prior to her adjudication, the child lived in the household of Appellants with one or both parents, depending on each parent's present incarceration and/or rehabilitation program enrollment status. Five days after the child's birth, a referral to the [Agency] was made regarding the biological father being intoxicated, and the father was arrested on DUI and controlled substance charges. During prolonged in-home intervention with the Agency, both parents exhibited a continuous pattern of IV drug use and lack of cooperation with Agency services. With no improvement in any aspect by either parent, M.M. was adjudicated

> dependent on May 23, 2014, and was taken [into] the custody of the [Agency].

Dependency Case docket, trial court opinion, 2/27/17 at 2.

The record reflects that following M.M.'s dependency adjudication, M.M. was placed in a pre-adoptive, non-kinship foster home where she remains. The record further reflects that appellants, as paternal grandparents of M.M., sought leave of court to file a custody action by filing a petition to confirm standing and application for leave of court to file custody action.[1] (Custody Case docket #2, petition to confirm standing and application for leave of court to file custody action, 12/21/15.[2]) The trial court granted appellants' petition. (Custody Case docket #5, order of court, 12/21/15.) Appellants then filed their complaint for custody of M.M. against M.M.'s birth father and birth mother, as well as against the Agency. (Custody Case docket #1, complaint for custody, 12/21/15.)

The record further reflects that on March 21, 2016, appellants filed a motion to intervene in M.M.'s Dependency Case pursuant to Pa.R.J.C.P. 1133 and Pa.R.C.P. 2328, alleging that as M.M.'s paternal grandparents, they "wish to become [M.M.'s] prospective adoptive parents" and requesting that

---

[1] Appellants sought confirmation of standing under that provision of the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, that confers standing to a grandparent of a dependent child who is not **in loco parentis** to the child and whose relationship with the child began with the consent of a parent of the dependent child and who is willing to assume responsibility for the dependent child. **See** 23 Pa.C.S.A. § 5324(3).

[2] The dates set forth in the record citations reflect docketing dates.

they "have access as a party to verify the veracity of whether the [A]gency properly engaged in family finding and kinship investigations." (Dependency Case docket #41, motion to intervene, 3/31/16.) The trial court granted appellants' motion to intervene. (Dependency Case docket #41, order of court, 3/21/16.)

The record further reflects that the Agency filed petitions to terminate the parental rights of the birth parents. (Dependency Case docket ##38 & 39, notice of petition to terminate parental rights of W.M., father, 12/1/15; notice of petition to terminate parental rights of R.G., mother, 12/1/15.) On May 9, 2016, the trial court entered orders granting the birth parents' petitions to voluntarily relinquish their parental rights. (Dependency Case docket ##45 & 46, notice of filing of order granting termination of parental rights -- child available for adoption re: mother, 5/31/16, and notice of filing of order granting termination of parental rights -- child available for adoption re: father, 5/31/16.) The record also demonstrates that on May 19, 2016, the trial court entered an order in M.M.'s custody case directing that appellants "shall be entitled to supervised visitation with [M.M.] at the [Agency] one (1) time per month until further order of court." (Custody Case docket #22, order of court, 5/18/16.)

A custody hearing was held over the course of five nonconsecutive days. Following that hearing, the trial court entered a custody order that awarded sole physical and legal custody of M.M. to the Agency and filed a

supporting opinion. Appellants filed a timely notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) that raised 69 issues. In response, the trial court filed a statement in lieu of opinion wherein it relied on the custody order and supporting opinion that it filed on December 1, 2016.

With respect to the Dependency Case, the trial court entered an order terminating appellants' intervenor status and discontinuing appellants' monthly visits with M.M. on December 15, 2016. Appellants filed a timely notice of appeal and Rule 1925(b) statement that raised 5 issues. In response, the trial court filed a Rule 1925(a) opinion.

With respect to the December 1, 2016 custody order, appellants raise the following issues for our review:

> 1. In a custody case involving a dependent child and having as parties the Agency[] and [appellants, who are the dependent child's grandparents], is it proper for the court to order, consider and give weight to a bonding assessment comparing the bond between the dependent child and a non-party foster parents [sic] versus the dependent child and the party [grandparents/appellants] and to give greater importance to the non-party bond than to the federal and state laws and regulations regarding family (including but not limited to *Fostering Connections to Success and Increasing Adoptions Act of 2008, Act 25 of 2003, Act 80 of 2012 and Act 55 of 2013, and custody Act 112 of 2010 (23 Pa.C.S.A. Section 5324))* and to the dependent child's rights to visit and be placed with family (*Act 119 of 2010)*[], to the dependent child's rights to visit

and be placed with family, or to the 16 custody factors as applied to the parties?

2. Did the Court properly examine and apply the law and testimony to the sixteen (16) custody factors as required by all applicable statutes?

Appellants' brief at 4 (emphasis in original).

In their brief, appellants summarize the "main issue" in their appeal of the custody order as "whether preference should be given to [appellants as] [g]randparents because they are family or whether preference should be given to nonrelative foster parents who have had [M.M.] in their care for a significant period of time and a bond has formed." (Appellants' brief at 15.)

To the extent that appellants claim that because they are M.M.'s grandparents, they should have been afforded the presumption of custody, appellants are mistaken. The Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, mandates that "[i]n any action regarding the custody of the child between a nonparent and another nonparent, there shall be no presumption that custody should be awarded to a particular party." § 5327(c). Moreover, to the extent that appellants claim that their status as M.M.'s grandparents should have been the controlling consideration in determining custody, appellants are equally mistaken. "When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.C. v. S.A.R.*, 96 A.3d, 396, 400 (Pa.Super. 2014) (citation omitted). Indeed, in custody disputes, trial courts are statutorily required to consider the 16 factors set forth in the best-interest test when determining the child's best interests.

*See* 23 Pa.C.S.A. § 5328(a) ("[i]n ordering any form of custody, the court shall determine the best interests of the child by considering all relevant factors . . . ."); *see also A.V. v. S.T.*, 87 A.3d 818, 821 (Pa.Super. 2014) (reiterating that "[s]ection 5328 provides an enumerated list of sixteen factors a trial court must consider in determining the best interests of the child or children when awarding any form of custody."). Therefore, to the extent that appellants claim that their status as grandparents trumped the best interests of M.M., that claim lacks merit.

In their brief, appellants contend that the trial court's consideration of the bond that formed between M.M. and her foster parents was "not relevant" to the custody determination and that the remaining 15 factors of the best-interest test "should have been used as a guideline on whether [appellants] are able to properly care for M.M." (Appellants' brief at 19.) Once again, appellants' argument ignores M.M.'s best interest. And, once again, we remind appellants that the polestar of all custody determinations, including this one, is the child's best interest, as opposed to a party's familial status and/or, as appellants now claim, a party's ability to care for the child.

Section 5328 of the Child Custody Act sets forth the 16-factor best-interest test, as follows:

> **§ 5328.  Factors to consider when awarding custody**

**(a) Factors.**--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)     The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)     Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)    Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)    The proximity of the residences of the parties.

(12)    Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)    The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)    The history of drug or alcohol abuse of a party or member of a party's household.

> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

42 Pa.C.S.A. § 5328(a).

With respect to our standard of review, it is well settled that

> [w]e review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial judge regarding credibility and the weight of the evidence. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

***C.A.J. v. D.S.M.***, 136 A.3d 504, 506 (Pa.Super. 2016) (citation omitted).

Here, after a 5-day custody hearing, the trial court carefully weighed the 16 factors of the best-interest test. The trial court found that factors 1, 6, 7, 8, 11, and 15 were inapplicable and that factor 3 favored neither party. The trial court further found that only factor 5 concerning the availability of extended family weighed in favor of appellants because the evidence supported the conclusion that appellants would make M.M. available to extended family. (Custody Case trial court opinion, 12/1/16 at 5-6.) The trial court, however, found that the remaining 8 factors favored the Agency.

With respect to factor 2, the trial court found that appellants' history of enabling M.M.'s drug-addicted birth parents, as well as appellants' history of advising M.M.'s birth parents against cooperating with the Agency, gave rise to a "significant doubt" regarding appellants' willingness to keep the birth parents out of M.M.'s life, which was not in M.M.'s best interest.  (*Id.* at 3.)

With respect to factor 2.1, the trial court found that appellant D.M., M.M.'s paternal grandmother, had been involved with child protective services in Allegheny County in the past as a result of D.M.'s abuse of her biological daughter.  Therefore, that factor weighed in the Agency's favor.  (*Id.* at 4.)

Regarding factor 4, the trial court found that because M.M. has been in the Agency's custody since May 23, 2014, it would be in M.M.'s best interest, for stability and continuity purposes, to remain there.  (*Id.* at 5.)

With respect to factor 9, which contemplates the child's emotional needs with respect to maintenance of a loving, stable, consistent, and nurturing relationship with the child, the trial court found that this factor weighed in favor of the Agency.  We note that appellants presently complain that the trial court improperly weighed the bond between M.M. and her foster parents because, according to appellants, that bond is irrelevant. Although appellants' brief regarding this contention suggests that the trial court considered M.M.'s bond with her foster parents under factor 16 of the best-interest test, which permits the trial court to consider "[a]ny other

relevant factor" not enumerated in factors 1 through 15, a reading of the trial court's opinion reveals that the trial court considered, among other things, that bond within the scope of factor 9, as follows:

> The Court can not [sic] apply a standard as amorphous as love to the [Agency]. However, we cannot ignore the likely outcome of this case, were the Court to find that the [Agency] was entitled to custody, which is that the minor child would maintain her existing parent-child relationship with her current foster parents, and thus we must analyze this factor in relation to [appellants as M.M.'s grandparents] and the child's foster parents. The Court heard testimony relating to this factor from [appellants] and from the minor child's foster parents, as well as from service providers involved in this case.

> Therapist Carol Patterson performed a bonding assessment with regard to the minor child's bond with both [appellants] and the foster parents, consisting of a two hour assessment involving observation of the minor child's interactions with both couples. Results of the assessment indicated a low level of bond and no attachment from the minor child as to [appellants], with the minor child presenting some avoidance behaviors towards [appellants]. Alexis Jacomen, supervisor of the visits between the child and [appellants], testified that the minor child is comfortable around and interacting with [appellants], however no special bond can be detected above that of a healthy child interacting with adults. Thus, there is currently no healthy relationship to maintain between [appellants] and the minor child. Although [appellants] testified credibly that a bond was established between [appellants] and the child over the first 8 months of her life when she was in [appellants'] care and during the child's sporadic visitation with her biological parents, it is not apparent that this bond has been maintained.

In contrast, the minor child presented high levels of attachment and bond towards her current foster parents in their bonding assessment with therapist Carol Patterson. Additionally, testimony from the Court Appointed Special Advocate, Jeanne Cerce, indicates that the child has a loving relationship with the foster parents, referring to them as her mother and father, and interacting with them in a manner typical of a child to a parent. From this and other testimony, it appears that the minor child has a strong parental bond with her foster parents that has been facilitated by the child's placement with the same by the [Agency]. This factor thus favors the [Agency].

*Id.* at 7-8. Regardless of the factor under which the trial court considered the bond that M.M. has with her foster parents, appellants' argument that consideration of that bond was irrelevant entirely lacks merit because consideration of M.M.'s emotional bond with her caretakers, as well as her lack of such a bond with appellants, goes to the heart of the best interest of this child and is, therefore, relevant.

Regarding factor 10, the trial court found that the Agency's services and the resources available to the Agency, insofar as attending to M.M.'s daily needs was concerned, outweighed the "personal advantages" that appellants had available. (*Id.* at 8.)

With respect to factor 12, the trial court found that the resources available to care for or to make appropriate child-care arrangements for M.M. slightly favored the Agency. (*Id.* at 9.)

Regarding factor 13, the trial court found that because appellant D.M., M.M.'s paternal grandmother, was hostile and unwilling to cooperate with the Agency, factor 13 weighed in favor of the Agency. (*Id.* at 9-10.)

With respect to factor 14, the trial court found that appellants' enabling behaviors with respect to the drug use of one or both birth parents, as well as their enabling behaviors with respect to their other children, weighted this factor in favor of the Agency. (*Id.* at 10-11.)

With respect to factor 16, which permits the trial court to consider "[a]ny other relevant factor," the trial court found that:

> [t]he Court cannot ignore the basis for [appellants'] standing to seek custody in this case; namely, a dependency case. The Court has indicated that the underlying dependency action resulted in the termination of the parental rights of the minor child's natural Mother and Father. In that posture, this Court is aware of two salient facts. First, kinship is the [Agency's] **first** option and mandate in every case. Second, where kinship is avoided it is typically for a good reason, and the Court does not apply that fact generally, but specifically based on the facts presented here.
>
> In this case, [M.M.] has been in the custody of the [Agency] for approximately thirty (30) months. In all that time, [appellants] were unable to gain kinship. This appears to have been exacerbated by [appellants'] lack of attempts to fully avail themselves of their rights as [g]randparents in a timely manner, coupled with their lack of cooperation with the [Agency]. Naturally, [appellants] disagree with the [Agency's] assessment, and the Court recognizes that we are referencing as a consideration the conclusions of an adverse party. However, in applying kinship procedures and regulations applicable to every dependency case, the [Agency's]

position takes on a far more objective, and highly probative, posture.

In a similar vein, the Court notes [appellants'] desire to inquire into the [Agency's] family finding efforts **in general**. That is, [appellants] would ask of the [Agency] what full scope of efforts at family finding the [Agency] undertook both in this case and in each of the broad spectrum of open cases it manages. The Court did allow for information related to family finding in this specific case for impeachment of the [Agency's] witnesses and challenges to its exhibits, however the Court denied a general, broad inquiry, to which [appellants] objected.

The broad spectrum objection is not well taken. First, family finding is an ongoing consideration in the underlying dependency case, making such matters ***res judicata*** at this juncture. In other words, it could have been and should have been addressed previously. Were ***res judicata*** inapplicable, consideration of family finding efforts in general is nevertheless irrelevant, as the custody factors overwhelmingly address conduct of the parties, as well as between the parties. To the extent a factor requires consideration of persons other than the parties, the Court has given due consideration, without superfluous reference to the [Agency's] general family finding efforts for family other than [appellants]. To put it another way, perhaps counsel for [appellants] should have undertaken representation of Mother or Father, or both, in the underlying dependency action, or worked in conjunction with their attorneys in the underlying dependency action to make objection to any concern with the [Agency's] broader family finding efforts.

[Appellants] presented evidence that they have severed ties with natural parents. Unfortunately, any such severance, assuming it has occurred, appears too little, too late in this case. As the Court notes above, commendable conduct in this case

would have been for [appellants] to have done what they needed to do to gain kinship, rather than taking the side of natural parents so deficient that their rights were terminated after extended attempts at reunification. Instead, the evidence shows that [appellants] remained, at the very least, in close contact with one or both of [the] natural parents as long as possible, even up to the time that termination of parental rights was likely to occur.

If [appellants'] chief concern was [M.M.], they should have removed natural parents from the home early in the underlying dependency case and advised them to follow the services provided by the [Agency]. Instead, [appellants] chose sides, and chose very poorly. To the extent [appellants] offered to remove natural parents from the home previously, but failed to follow through, the Court does not intend to hold such fact against the [Agency]. The [Agency] provided testimony numerous times that there can be no kinship placement in a home where the natural parents reside, who caused the dependency to come about.

From the above, it follows that little or no consideration of [appellants] as a kinship placement would have been warranted, when the natural parents resided with [appellants] and [appellants] continued to enable their conduct. [Appellants'] course of conduct and consistent failure to follow through on efforts truly supportive of kinship is contrary to their stated desires. Additionally, it is apparent that the desires of [appellants] cannot at this late hour be satisfied without sacrificing [M.M.'s] progression, as she is growing and thriving in the foster parents' nurturing, familial environment.

It is this Court's experience that the [Agency] does not take custody of children on a whim; the goal is for children to remain with parents, followed immediately by a change to reunification with parents, should dependency occur. The [Agency] likewise only seeks to terminate parental rights after extensive and unsuccessful efforts at reunification.

- 16 -

In any dependency proceeding, they are mandated to maintain and foster the minor child's health and well-being. Finally, they do not place children in foster **or** kinship homes that exhibit inappropriate caregivers. The Court notes such general practices insofar as the [Agency] appears not to have deviated from such mandates in this case.

The Court emphasizes that, unlike standard custody determinations, this case must end one way or another, with a grant of sole physical and legal custody to one party. Any other result would create, in essence, an indefinite dependency case with ongoing liabilities and pecuniary responsibilities for the [Agency]. The Legislature of this Commonwealth decided long ago that endless exposure to the dependency system by minor children is contrary to their best interest. There is no greater boon to the minor child's best interests than permanency.

The Court believes that the above additional considerations substantially favor an award of custody to the Agency.

*Id.* at 11-14 (emphasis in original; footnote omitted).

Our review of the extensive record in this case demonstrates that the evidence supports the factual findings made by the trial court when it applied the 16-factor best-interest test to award custody of M.M. to the Agency because that award was, and is, in M.M.'s best interest. Accordingly, we discern no abuse of discretion and affirm the order entered in the

Custody Case on December 1, 2016 that awarded sole legal and physical custody of M.M. to the Agency.[3]

With respect to the Dependency Case, appellants raise the following issues for our review:

> 1. Is it proper for the Court in a dependency matter to enter an Order (apparently either sua sponte or based upon ex parte communication) without a Motion being presented, notice being given, a hearing being schedule[d] or argument being heard?
>
> 2. Is it proper for the Court to make a decision (apparently either sua sponte or based upon ex parte communication) regarding whether [appellants] should be allowed to continue as intervene[o]rs in the dependency matter, despite continuing grounds for intervening, without a Motion being presented, notice being given, a hearing being schedule[d] or argument being heard?
>
> [3.] Is it proper for the Court in a dependency matter to enter an Order regarding custody matters?
>
> [4.] Is it proper for the Court in a dependency matter to enter an Order (apparently either

---

[3] In the argument section of their brief, appellants claim that the trial court "abused its discretion and/or committed an error of law when it failed to follow the [r]ules at Pa.R.A.P. 1915.4(c) regarding the time frame to commence and complete a custody trial." (Appellants' brief at 29.) Because appellants failed to include this issue in their statement of questions involved and the issues raised in that statement do not fairly suggest this issue, appellants waive the claim on appeal. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the questions involved or is fairly suggested thereby.); *see also HSBC Bank, NA v. Donaghy*, 101 A.3d 129, 137 n.7 (Pa.Super. 2014) (reiterating that an "issue not explicitly raised in appellants' statement of the questions involved is waived." (citations omitted)).

sua sponte or based upon ex parte communication) regarding the custody matter, which is not before the Court, and without any motion being presented, notice being given, hearing being scheduled or argument being heard?

[5.]    Is it proper for the Court in a dependency matter to make a custody decision (apparently either sua sponte or based upon ex parte communication), on whether the status quo of [appellants] visiting once a month should be ended, without any motion being presented, notice being given, hearing being scheduled or argument being heard?

[6.]    Is it proper for the Court in a dependency matter to enter an Order (apparently either sua sponte or based upon ex parte communication) regarding the custody matter, without any motion being presented, notice being given, hearing being scheduled or argument being heard?

Appellants' Dependency Case brief at 5.

Although appellants set forth 6 issues in their statement of questions involved, they, in fact, only raise 2 claims. In their first claim, appellants contend that the trial court erred in terminating their status as intervenors without the presentation of a motion, without notice, without the scheduling of a hearing, and without a hearing and argument. We agree with the trial court's disposition of this claim, as articulated as follows:

The Appellants were provided with a five (5) day custody trial in which they were able to present any and all evidence available to them which would lead this Court to believe that they should have custody of or contact with the minor child, M.M. The result of

- 19 -

the trial was an award of sole legal and sole physical custody to the Agency.

The Superior Court tells us that "safety, permanency, and well-being of the child must take precedence over **all** other considerations, including the rights of the parents." **In re N.C.**, 909 A.2d 818, 823 [(Pa.Super. 2006) (citation omitted) (emphasis in original)]. Biological grandparents, unlike biological parents, do not have any fundamental rights that are protected through the procedures of the Juvenile Act. Appellants cannot be afforded further process when that process comes at the cost of the child's permanency and well-being. Although no hearing or argument was held in the matter of removal of [a]ppellants' Intervenor status, M.M. had been in Agency custody for thirty one (31) months at the time of the at-issue dependency order. The rights of her biological parents had been terminated for over six (6) months. The record of [appellants'] involvement with M.M. had been well established in the related custody trial. Any further proceeding in this matter would have proved redundant and duplicative of the matters discussed thoroughly in the custody case, thereby delaying M.M.'s permanency further. Although [a]ppellants have made complaints regarding the Agency and their methods throughout both cases, that is no reason to deny M.M. a permanent, safe, and loving home outside of Agency custody at this stage in the proceeding.

Dependency Case trial court opinion, 2/27/17 at 3-4 (emphasis in original).

Finally, appellants complain that the trial court erred when it terminated their court-ordered visitation in the Custody Case by entering the order in the Dependency Case docket.

The record reflects that when appellants filed their motion to intervene in the Dependency Case, they did not request visitation as part of their

requested relief. The record further reflects that the trial court entered an order in the Custody Case that entitled appellants to supervised monthly visits with M.M. until further action of the trial court. (Custody Case, docket #22, order of court, 5/18/16.) Following the hearing in the Custody Case and the entry of the order awarding custody of M.M. to the Agency, the trial court entered an order in the Dependency Case that terminated appellants' intervenor status and also terminated appellants' monthly visits with M.M. The gravamen of appellants' complaint, therefore, is that because the order entitling them to monthly visitation with M.M. was entered in the Dependency Case, it was error for the trial court to terminate their visitation by entering the termination order in the Custody Case. In other words, appellants complain that the trial court entered the order terminating their visitation in the incorrect docket. The trial court reasoned that "[v]isitation with [a]ppellants has always proceeded through the Agency in the context of the [D]ependency [C]ase, and thus the [D]ependency [C]ase was the proper venue for making any such changes." (Dependency Case trial court opinion, 2/27/17 at 5.) The trial court continued and opined that "[e]ntering the cessation of visits in the [C]ustody [C]ase, or alternatively in both cases, would have provided exactly the same outcome." (*Id.*) To be sure, although we affirm the Dependency Case order, we remand and direct the trial court to enter an order in the Custody Case docket that terminates appellants' monthly visits with M.M.

Custody Case order affirmed. Dependency Case ordered affirmed. Remanded to the trial court with instructions to enter an order on the Custody Case docket that terminates appellants' monthly visitation with M.M. Jurisdiction relinquished.

Stabile, J. joins this Memorandum.

Strassburger, J. files a Concurring Memorandum which is joined by Stabile, J.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2017